## MASSIE et al. v. BUCK.

(Circuit Court of Appeals, Fifth Circuit. February 16, 1904.)

### No. 1,252.

1. FEDERAL COURTS — JURISDICTION — LAND TITLES — CANCELLATION — STATE COURTS—DECREES—ENFORCEMENT—INJUNCTION.

Rev. St. § 720 [U. S. Comp. St. 1901, p. 581], forbidding federal courts to issue an injunction to stay proceedings in any court of the state except in cases where such injunction may be authorized by any law relating to bankruptcy proceedings, does not deprive a federal court of jurisdiction to restrain a defendant from selling, incumbering, or in any way disposing of lands purchased at a sheriff's sale, where such injunctive remedy is ancillary to the granting of relief in a suit to set aside the sheriff's deed, of which the federal court had jurisdiction.

2. SAME—INJUNCTION—DISCRETION—REVIEW.

The granting of a preliminary injunction in the exercise of the judicial discretion of the Circuit Court will not be set aside on appeal unless it clearly appears that the court erred in applying the legal principles which should have guided it, when considered from the Circuit Court's standpoint.

3. SAME.

Where a suit was brought to set aside certain notes and a sheriff's sale of certain lands described in the bill, and injunction was asked restraining the purchaser at the sale from selling, incumbering, or disposing of the lands, etc., and defendant would be fully protected against loss by reason of the injunction, by a proper bond, it was not an abuse of the trial court's discretion to refuse to vacate a temporary injunction issued, on a motion made before demurrer, plea, or answer to the bill.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

The following is the statement and opinion of the court below (PARLANGE, District Judge):

The bill of complaint of Charles C. Buck, a citizen of Maryland, against Jessie H. Massie and Robert M. White, both citizens of Louisiana, filed March 2, 1903, alleges, inter alia: That in 1891 White offered to sell to Buck for $25,000 a certain tract of land described in the bill, and which White represented to contain about 28,000 acres. That Buck accepted the proposition, and a written agreement was executed by which White agreed to sell to Buck the said lands for $25,000, of which $5,000 were to be paid in cash, $10,000 in stock of a company to be formed to develop said lands, and for the balance notes secured by vendor's lien and mortgage were to be given. That certain capitalists then agreed with Buck to form a company which would buy said lands from him if he succeeded in procuring from White a deed thereto, and

¶ 1. Federal courts enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575.

that they would pay Buck therefor $150,000, of which $120,000 was to be in stock of the company, and the balance in cash and notes. In pursuance with this agreement a company was organized in New Jersey under the name of Plaquemines Tropical Fruit Company, and a resolution was passed authorizing the company to purchase said lands from Buck, on said terms, and Buck was then elected president of the company. That White refused to execute to Buck a deed in accordance with his agreement, and Buck brought suit in this court against White to compel a specific performance of his contract. That White then proposed, by way of compromise, that if Buck would pay the costs of said suit, and would give him the $5,000 in cash, as provided in the agreement, and notes for $15,000 instead of $10,000, secured by mortgage, as provided in the agreement, and give him $7,000 in the stock of the company instead of $10,000 of stock, as was provided in the agreement, and would permit him to cut willows on a certain part of said lands for one year, that he (White) would execute the deed for the said lands, and also for another tract of about 4,000 acres adjoining said lands, which offer of compromise Buck accepted. That Buck and White proceeded to the office of a notary for the purpose of having an act of sale to said lands passed from White to Buck, and another from Buck to the fruit company, but it was then suggested by Charles Louque, who was then Buck's attorney, that as Buck was the only officer of said company present in Louisiana, and would therefore have to accept the sale to the company, Buck ought not to be its vendor, and the attorney advised that a third person accept the sale for Buck from White and make the transfer to the company. Thereupon the acts of sale to said lands from White to Louque and from Louque to the fruit company were passed, Louque having no individual interest in the matter, but being merely a party interposed as Buck's representative, with the full knowledge and consent of White. That the consideration of the sale from White to Louque was $30,000—$10,000 in cash, and the balance in three notes of Louque, one for $10,000, and two for $5,000 each, all secured by vendor's lien and mortgage; and the consideration of the sale from Louque to the company was $150,000—$10,000 in cash, and the assumption by the company of the three notes of Louque and $120,000 in stock of the company. That, in lieu of the $10,000 cash payment recited in the act of sale, White accepted $5,000 cash and $7,000 in stock of the company, and White returned one of the $5,000 notes, leaving outstanding in his hands the $10,000 note and the other note for $5,000. The fruit company at once went into possession of said lands, and began to make extensive improvements thereon, and up to the time of the decision of the suit of the state of Louisiana against said fruit company and Buck, which will be referred to more fully hereafter, had expended more than $30,000 in improving said land. That in January, 1892, the state of Louisiana brought suit in the civil district court for the parish of Orleans, La., against Buck and the fruit company, claiming that the state was the owner of all the lands first described in the act of sale from White to Louque, lying west of and behind a certain 1,320 acres originally patented to one C. C. Packard. That the defendant company called Louque in warranty, who in turn called White in warranty. That the civil district court rendered judgment in favor of the state, declaring it to be the owner of all of said lands back of said 1,320 acres, but reserving the rights of the defendants, Buck and the fruit company, and of Louque, against White as warrantor. That this judgment was affirmed by the Supreme Court of the state, and the judgment is final. State v. Buck, 46 La. Ann. 656, 15 South. 531 et seq. That since the said judgment in favor of the state became final the state has transferred to other parties all of said lands and the fruit company has been evicted therefrom. That the fruit company has not left to it since said eviction even said 1,320 acres, because Buck believes and charges that said tract does not contain more than 700 acres, and maybe less. That subsequently, in the suit of R. M. White v. Augustus Leovy, 49 La. Ann. 1660, 22 South. 931, et seq., a decree was rendered in April by the Supreme Court of the state, the effect of which was that White never had title to the tract of 4,000 acres secondly above mentioned. That the result of the two decisions of the Supreme Court of the state is that White had and conveyed title to and Louque and the fruit company acquired less than 1,320 acres out of a total of 32,000 acres which formed the consideration of said sales. That in 1897 White brought suit in the district court for the parish of Plaquemines on the

$5,000 note of Louque against Louque and the fruit company to foreclose the vendor's lien and mortgage by executory process, and a little later Massie, who acquired the $10,000 note of Louque from White, after its maturity, instituted a similar foreclosure suit on said $10,000 note in the same court, against the same defendants. That subsequently, and before the trial, White transferred to Massie all his rights as plaintiff, and Massie was duly substituted of record as plaintiff, and the two causes consolidated. The fruit company, through its curators appointed by the court in said two suits, filed a petition against Massie and the sheriff in opposition to the seizure and sale, and prayed for an injunction without bond, and for judgment declaring said notes null and void, without consideration, and not binding on petitioner, and that the mortgage securing the same be canceled, because (1) they are not due, and the consideration for the same has absolutely failed and been extinguished, the company having been evicted from more than 95 per cent. of the lands; (2) because the notes are barred by the prescription of five years; (3) because the notes were obtained through fraud by White, he knowing at the time that he was not the lawful owner of the property sold by him for cash and for said notes. White was also made a party defendant, and judgment was prayed for condemning him to restore the said $7,000. An injunction without bond was granted, and issue was joined by Massie and White, and after trial on the merits the court, holding that there was no proof of fraud and that the notes were not prescribed, dissolved the injunction, and expressly declined to pass on the plea of want or failure of consideration of the notes, though the same was specially pleaded and strongly urged, but nevertheless dismissed the company's demand. That subsequently, under the writs issued in said consolidated cause, the sheriff of Plaquemines parish, La., advertised for sale on November 3, 1900, and on that day sold and adjudicated to Massie, the plaintiff, for the sum of $2,000, certain property which the bill describes as containing 1,320 acres, as defined in the decision of the Supreme Court. State v. Buck, 46 La. Ann. 656, 15 South. 531, et seq. That, no appeal having been taken by the fruit company from said judgment up to and within three days of the expiration of a year from its rendition, Buck, as a stockholder in said company, and in his individual capacity as the real purchaser from White and the real vendor to the company, took an appeal from said judgment to the Supreme Court of the state, and on December 1, 1902, the appeal was dismissed for failure to cite White. That said judgment dismissing the fruit company's demand as aforesaid was not res judicata as to said company's plea that the consideration of the notes of Louque for $10,000 and $5,000, respectively, had failed, and that said notes were wholly without consideration, because the court expressly declined to pass on the same, as appears by the written opinion of the judge of said court. That the fruit company was dissolved in 1896, its charter having been duly declared forfeited by the Governor of New Jersey, and no liquidator, receiver, or other representative has even been appointed to represent it, and said company has no assets or property other than the tract of land herein involved, to wit, that part of said 1,320 acres originally patented by the state to C. C. Packard, which lies west of Grand Pass, of which Buck has for a long time been, and still is, in possession as tenant of said company. That Buck is a large stockholder in said company, being the owner of more than $50,000 of the capital stock out of a total capital stock of $163,400, and that as such stockholder he has an interest in all of said company's rights, property, etc., and has the right to protect and preserve the same. That said company, being defunct, and without any legal representative, there is no one to whom Buck may apply to bring this suit or institute such other legal proceedings as may be proper and necessary for the protection of its said property, and so Buck brings this bill in behalf of himself and all other stockholders and persons interested. That Buck was the real purchaser from White and the real vendor to the fruit company, and he is the real obligor on said two notes to Louque, who acted for Buck with the full knowledge and consent of White, and that if said notes are held to be legal, and the said sale to Massie is upheld, Buck, as well as the fruit company, will be indebted by said notes for more than their face value, the proceeds of said sale to Massie, to wit, $2,000, being insufficient to pay the accrued interest on said notes. That the tract of say 700 acres to which alone White had and conveyed title out of

a total of 32,000 acres was not at the time worth more than $1.000, and is not now worth more than $2,000, the amount bid by Massie for the same at the sheriff's sale, and was more than paid for by the cash payment of $5,000, leaving out of consideration the $7,000 in stock. That said two notes, and the mortgage given to secure the same, should be declared null and void (for want and failure of consideration on grounds heretofore mentioned and which are reiterated in detail in the bill), and Massie ordered to return said notes to Buck, and that said sheriff's sale to Massie be annulled, and the sheriff's deed to Massie be ordered canceled, and White be compelled to return to the fruit company the $7,000 of its stock, and so much of said $5,000 as this honorable court may find to be in excess of the value, at the date of sale, of said tract of land remaining to the fruit company after its eviction. That Buck fears that Massie might attempt to eject him from said property, and take possession of the same, and alienate or incumber it, during this suit, unless enjoined. The prayer was in accordance with the allegations of the bill, and for an injunction.

#### Opinion.

The only question now before me is whether on the rule nisi a preliminary injunction shall issue. The main, if not the only, objection raised by the solicitor for defendants to the issuing of the writ is the contention that section 720, Rev. St. [U. S. Comp. St. 1901, p. 581], forbids the court from issuing the writ. Several cases have been cited in support of the contention, among them Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407.

In Garner v. Bank (decided by the Circuit Court of Appeals for the First Circuit) 67 Fed., at page 836, 16 C. C. A. 86, Circuit Judge Putnam, as the organ of the court, said, with regard to section 720, Rev. St. [U. S. Comp. St. 1901, p. 581]:

"But it is now so thoroughly settled that this provision of law does not apply to proceedings incidental to jurisdiction properly acquired by a federal court for other purposes than that of enjoining proceedings in a state court that the proposition needs no discussion by us."

Specially see Judge Grosscup (now Circuit Judge) in Terre Haute, etc., Co. v. Peoria, etc., Co. (C. C.) 82 Fed. 943, the syllabus of which case reads:

"Rev. St. § 720 [U. S. Comp. St. 1901, p. 581], which declares that federal courts shall not by injunction stay proceedings in state courts except in bankruptcy matters, does not deprive a federal court of jurisdiction to enjoin proceedings in a state court as ancillary to granting relief in a case in which the federal court has jurisdiction."

Also notice Circuit Judge McCormick in Central Trust Co. v. St. Louis, etc., Ry. Co. (C. C.) 59 Fed. 385.

The doctrine of Barrow v. Hutton has been further elucidated by the Supreme Court in Marshall v. Holmes, 141 U. S. 597, 12 Sup. Ct. 62, 35 L. Ed. 870.

It is clear to the court that the injunction prayed for is but an incident to the main relief sought by the bill, and that under the settled jurisprudence the issuing of the preliminary injunction does not contravene section 720, Rev. St. [U. S. Comp. St. 1901, p. 581]. The bill states a case which, in the court's opinion, entitles the complainant to the writ, and it therefore should issue.

E. Howard McCaleb, for appellants.

E. B. Kruttschnitt, D. C. Mellen, and J. Ward Gurley, for appellee.

Before McCORMICK and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an appeal taken under section 7 of the act establishing the Circuit Courts of Appeals, as amended June 6, 1900, c. 803, 31 Stat. 660 [U. S. Comp. St. 1901, p. 551]. The bill was filed in the Circuit Court by Charles C. Buck, the appellee, against J. H. Massie and others, the appellants. It is an elaborate and carefully prepared pleading, consisting of nine closely printed pages,

describing certain business transactions between the complainant and the defendants, and asserting complainant's rights growing out of such transactions. The bill concludes with a prayer that two notes of Charles Louque for $10,000 and $5,000, respectively, and a sale made by the sheriff of the parish of Plaquemines to the defendant J. H. Massie, and the sheriff's deed to J. H. Massie of certain lands described in the bill, be annulled and canceled; and, after stating other prayers for relief, there is a prayer "that a writ of injunction issue herein, enjoining and restraining the said Jessie H. Massie from selling, incumbering, or in any way or manner disposing of said lands adjudicated to him by said sheriff of Plaquemines parish, Louisiana, as aforesaid, and described in said deed from said sheriff to him, and from attempting to take possession of the same, and from doing, or causing to be done, any other thing which from the filing of this bill may, during the pending hereof, hinder or delay your orator from obtaining adequate relief in the premises, and that upon the hearing herein said preliminary injunction may be made perpetual." The injunction was granted as prayed for.

We learn from the opinion of the trial judge, which is copied in the record, that the main, if not the only, objection made to the issuing of the writ of injunction was that section 720 of the Revised Statutes [U. S. Comp. St. 1901, p. 581] forbids the court from issuing the writ. That section provides that "the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of the state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

A federal court, in a proper case, has jurisdiction to cancel titles made by authority of a decree of a state court, and this statute (section 720) does not deprive a federal court of jurisdiction to enjoin proceedings in a state court when such injunctive remedy is ancillary to granting relief in a case of which the federal court has jurisdiction. Terre Haute & I. R. Co. v. Peoria P. U. R. Co. (C. C.) 82 Fed. 943; Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 354.

The bill is the only pleading in the case. No demurrer, plea, or answer has yet been filed. The case has been argued here elaborately, both orally and in the briefs filed, the argument being addressed to the merits of the case. The question arises at once: To what extent ought this court go into an examination of the merits of a case on an appeal from an interlocutory order granting a temporary injunction? Unless there is some strong reason for it, we ought not to decide the merits of the case before they have been decided by the lower court. The granting or withholding of a preliminary injunction is in the sound judicial discretion of the Circuit Court. We ought not to interfere with the exercise of that discretion, unless it clearly appears that the court has erred under the established legal principles which should have guided it. Clearly, the propriety of its action should be considered from the standpoint of the Circuit Court. When a bill is presented asserting claims that raise grave questions of law, and which the court must decide before rendering a final decree, it is within the sound judicial discretion of the court to preserve the existing status until the case is

finally decided, whenever that course is necessary to fully protect the plaintiff. Especially is this true in cases where the defendant can be fully protected against any loss by reason of the injunction by requiring a proper bond of the plaintiff. City of Newton v. Levis, 79 Fed. 716, 25 C. C. A. 161. On an appeal from an order like this, the only question is whether or not the injunction has been improvidently granted. The order of the court will not be disturbed on appeal unless it is violative of the rules of equity that have been established for the guidance of its discretion. Kerr v. City of New Orleans (C. C. A.) 126 Fed. 920, and cases there cited.

It does not appear to us that the order granting the preliminary injunction was improvidently made. The judgment of the Circuit Court is affirmed.