RAILROAD COMMISSION OF LOUISIANA et al. v. TEXAS & P. RY.
CO. et al.

(Circuit Court of Appeals, Fifth Circuit. April 3, 1906.)

No. 1,537.

1. COURTS—JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE BOARD.
Const. La. art. 285, having given to any railroad company the right
to maintain proceedings in a state court against the state railroad com-
mission to contest the validity of any decision, rule, or order of the
commission, a company which is a citizen of another state may main-
tain a suit for the same purpose in a federal court, where the amount
involved is sufficient to give the court jurisdiction.

2. SAME—AMOUNT OR VALUE IN CONTROVERSY.
Where a state railroad commission imposed a fine of $2,000 on each
of two connecting railroads for through charges made on shipments, in
alleged violation of an order of the commission, a bill for an injunction,
filed by the companies as joint complainants, alleging such fact, and
that the commission threatened and intended also to enforce its said
order with respect to future shipments, shows a sufficient value in
controversy to give a federal court jurisdiction.

[Ed. Note.—Jurisdiction of Circuit Courts as determined by the
amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Ten-
nent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

3. SAME—SUIT AGAINST STATE.
A suit by railroad companies against the Louisiana state railroad
commission, to enjoin the enforcement of an alleged illegal rate made by
the commission, and the collection of fines imposed by it for past viola-
tion of its orders, is not a suit against the state, within the meaning of
the eleventh constitutional amendment, and is within the jurisdiction of
a federal court.

[Ed. Note.—Federal jurisdiction of suits against states, see note to
Tindall v. Wesley, 13 C. C. A. 165.]

4. SAME—INJUNCTIONS—ENJOINING SUIT IN STATE COURT.
An injunction to sustain the jurisdiction of a federal court already
rightfully acquired is not forbidden by Rev. St. § 720 [U. S. Comp. St.
1901, p. 581], prohibiting injunctions by federal courts to stay proceed-
ings in a state court.

[Ed. Note.—Federal courts enjoining proceedings in state courts, see
notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co.
v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

5. INJUNCTION—PRELIMINARY ORDER—REVIEW ON APPEAL.
Where a bill is presented asserting claims involving grave questions
of law and disputed issues of fact, which the court must determine before
rendering a final decree, it is within its sound judicial discretion to pre-
serve the existing status by a preliminary injunction, until the case is
finally decided, whenever necessary to protect the complainants' rights
or sustain the jurisdiction of the court, and an order granting such in-
junction will not be set aside on appeal, unless the court erred in the
application of legal principles.

Appeal from the Circuit Court of the United States for the East-
ern District of Louisiana.

Walter Guion, for appellants.

W. W. Howe, W. B. Spencer, C. P. Cocke, J. D. Wilkinson, F.
G. Hudson, and Samuel W. Moore, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge.   The appellees, the Texas & Pacific Railway Company, the St. Louis, Iron Mountain & Southern Railway Company, and the Kansas City Southern Railway Company, styled hereafter "The Texas Company," "The Iron Mountain Company," and "The Kansas City Company," respectively, brought their suit for injunction against the Railroad Commission of Louisiana, naming the members, in the Circuit Court for the Eastern District of Louisiana, at Baton Rouge, and by an amended and supplemental bill made Walter Guion, Attorney General of the state of Louisiana, a defendant. After setting forth the necessary allegations as to the parties and the amount involved, to show the jurisdiction of the court, the bill—treating the original and supplemental bill as one—in substance, averred that the appellees are engaged in transportation over their lines from certain points in Louisiana to New Orleans of a certain described class of freight made up of forest products, including all kinds of logs, lumber, staves, etc., which they have carried from points in Louisiana to the Port of New Orleans. The Texas Company, being the only one whose lines reach New Orleans, received the freight from the other two, and on its arrival at New Orleans was notified by the local consignees to deliver the freight to certain steamship lines plying between New Orleans and European ports, which was done, and the transportation from the points of origin to the points of destination in Europe was a continuous carriage of the freight, allowing only the necessary time for trans-shipment at the port of New Orleans, and was always intended by the shippers and consignees to be such; that the complainants as required by law, had established, published and filed with the Interstate Commerce Commission tariffs of rates for the carriage of such freight between the points on their lines and New Orleans, by which tariffs all such freight from points on the Iron Mountain Road was carried at a rate of 12 cents per hundred pounds, and from points on the Kansas City road at a rate of 15 cents per hundred pounds; that at various times, from November 15, 1904, to May 25, 1905, the Railroad Commission of Louisiana had made and published certain orders, duly set out in the bill, the effect of which, as construed by the Railroad Commission, was to put into effect a rate of 10 cents per hundred pounds on lumber, staves, and logs carried between all points on the lines of the appellees and the city of New Orleans. After these orders were made and published, and after the time at which they were made to take effect, the appellees received at various points and different times certain car loads of freight referred to in the bill, all of which are averred to have been intended and destined by the shippers and consignees to be exported to foreign countries from the port of New Orleans, and that the transportation of this freight from the points of origin to the points of destination in Europe was a continuous carriage, allowing only necessary time for trans-shipment at the port of New Orleans, and that it was always intended by the shippers and the consignees to be such; that the fact that such car loads of freight were destined for such export was well known by the agent of the carriers, who received the same, and it was so

noted or indicated by him on at least some of the receipts and bills of lading furnished the shippers, and on the Kansas City Road, were received at the rate of 15 cents per hundred pounds, and on the Iron Mountain Road at the rate of 12 cents per hundred pounds; that thereafter certain parties named in the bill filed with the Railroad Commission of Louisiana formal complaint, claiming that the freight transported in the cars described was subject to a rate of 10 cents per hundred pounds, as intrastate as distinguished from interstate or foreign commerce. After due notice to the appellees, the commission heard the complaint and adjudged that the shipments were domestic, as distinguished from foreign commerce, and were subject to the rate established by their previous orders; that in demanding and receiving a higher rate appellees had committed an offense for which they were sentenced, respectively, to pay certain fines. The bill prayed that an injunction issue restraining the Railroad Commission from in any wise attempting to enforce its sentence against the appellees and from in any wise attempting to collect, or from directing the collection of the penalties already imposed, and restraining it from imposing or attempting to impose upon, and from collecting or attempting to collect from the carriers any other or further penalties for nonobservance of its orders Nos. 410, 419, and 445 establishing rates, and that until the hearing hereof complainants may have a restraining order embracing the relief prayed for. The original bill was filed December 4, 1905. On the next day the complainants exhibited the same to one of the judges of the Circuit Court of the Eastern District of Louisiana, and on motion of their counsel the judge made this order:

"On the facts stated in the bill and amended bill, which amended bill is allowed to be filed, it is ordered that the defendants in said bill and amended bill show cause on Saturday, January 6, 1906, at 11 a. m., before the court in New Orleans, why an injunction pendente lite should not issue herein as prayed for in said bill and amended bill, or why such other and further order should not be made as may be just."

On January 1, 1906, Walter Guion, Attorney General of Louisiana, entered his appearance for the Railroad Commission of Louisiana, and on January 6th he, as Attorney General of Louisiana and solicitor for defendants, submitted a demurrer which was verified by the affidavit of the chairman of the commission and certified by the Attorney General and solicitor for defendants, alleging in substance: (1) That the bill shows no cause of action; (2) that it is a suit against the state; (3) that the amount involved is not sufficient to support the jurisdiction of the Circuit Court; (4) that it shows no power or authority in the defendants or either of them to stand in judgment herein, or any right, title, or interest whatever in the defendants or either of them, which defendants or either of them ought to be compelled to defend; (5) that the plaintiffs have a plain, adequate, and complete remedy at law.

Affidavits were submitted by the parties, respectively, presenting mixed matters of law and fact tending to support the respective contentions of the parties. The matter of the application of the complainants for a preliminary injunction herein was fully argued by

counsel for the respective parties and submitted to the court, and on January 25th the judge filed his order containing this provision:

"Whereupon, on due consideration thereof, it is now ordered by the court, for the reasons this day filed, that a preliminary injunction issue herein as prayed for in the bill of complaint, on complainants' giving good and sufficient bond and surety in the sum of five thousand ($5,000) dollars to be approved by the court."

From that decree this appeal was taken.

The errors assigned are, in substance: (1) That the bill does not state a case which entitles complainants to a writ of injunction; (2) that the issuance of the injunction is in violation of section 720 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 581]; (3) that the injunction, so far as it restrains the collection of the penalties heretofore imposed, is an order or injunction against the state of Louisiana, and is obnoxious to the provisions of the eleventh amendment to the Constitution; (4) that the amount involved is not sufficient to support the jurisdiction of the Circuit Court as to the case made by the Kansas City Company and the Iron Mountain Company.

The vital question in the case is whether these shipments· set out in the pleadings are subjects of foreign commerce, or were they intrastate? If they were, in fact, foreign commerce, they were not subject to the control of the Railroad Commission of Louisiana as to the rates for the carriage. This appears to be conceded and is, we think, well settled.

Article 285 of the Constitution of Louisiana provides:

"If any railroad * * * be dissatisfied with the decisions or fixing of any rate, classification, rule, charge, order, act or regulation, adopted by the commission, such party may file a petition setting forth the cause of objection to such decision, act, rule, charge, classification or order, or to either or to all of them, in a court of competent jurisdiction, at the domicile of the commission, against said commission as defendants. * * *"

Article 286 contains this provision:

" * * * Provided, that whenever any rate, order, charge, rule or regulation of the commission is contested in court, as provided in Article 285 of this Constitution, no fine or penalty for disobedience thereto, or disregard thereof, shall be incurred until after said contestation shall have been finally decided by the courts, and then only for acts subsequently committed."

Whenever a citizen of a state can come into the courts of a state and defend his property against the illegal acts of the state officers, a citizen of another state may invoke the jurisdiction of the federal courts to enforce a like defense. Smyth v. Ames, 169 U. S. 517, 18 Sup. Ct. 418, 42 L. Ed. 819, and cases there cited.

We understand that the appellants do not deny that, to the extent that the suit is one to set aside the order of the Railroad Commission in respect to the tariffs of rates and charges on the logs, staves, and heading specified and complained of in the bill, they had a right to bring this suit in the Circuit Court, subject to the limitation as to the amount in value of the injury or loss alleged; but they do deny that the Circuit Court had jurisdiction as to that part of the complaint, wherein it is sought to prevent the Attorney General or the

Railroad Commission itself from bringing suit to recover the penalties already imposed.

The shipments in question, for the carriage of which the rates demanded and collected were adjudged by the commission to have been a violation of the rates which had been established by it; were in each instance carried over the lines of two of the complainants. All of the shipments passed over the line of the Texas Company; some of them having originated on the line of the Iron Mountain Company, and some on the line of the Kansas City Company. The fines were pronounced against the carriers separately in each case for $2,000, by which the Kansas City Company was sentenced to one fine of $2,000, and the Iron Mountain Company was sentenced to one fine of $2,000, and the Texas Company was sentenced to two fines of $2,000 each.

It being conceded, or if not conceded we deem it to be clear, that the court had jurisdiction to entertain the bill to determine whether the shipments specified were subjects of foreign commerce, or were intrastate shipments, provided the injury or loss in a jurisdictional amount was shown to have been incurred or threatened, the relief sought and obtained by the preliminary injunction was in its nature ancillary and entirely proper, if not in fact necessary, for the purpose of sustaining the jurisdiction of the court. It does not appear that the lines of road of the complainant companies, other than the Texas Company, reach New Orleans. It does appear that shipments made, as to which the other lines were initial carriers, contemplated and required the goods to be carried over the connecting carrier's line under the tariff rate established, published, and filed with the Interstate Commerce Commission, by these connecting lines. It is true that the complainants, as separate and distinct independent parties, could not, by becoming coplaintiffs and adding the single fine of $2,000, pronounced against one, to the single fine of $2,000, pronounced against the other, bring their case within the requirements in reference to the amount involved, to support the jurisdiction of the Circuit. Court. But this is not that case. Here the complainants are not, as to the matters herein involved, separate, distinct and independent parties. There is shown a certain and necessary connection between them as to the matters here in question. They attempt to show a substantial right, and seek relief against a specific incurred, continuing, and threatened unjust charge, in the exercise of evident good faith, without any badge of intent or purpose to practice a fraud upon the jurisdiction of the court.

In such a case the court may and will take a larger view in passing upon the value of a right, than that which would be obtained by considering the difference between the rates already received and those sought to be imposed, or by making the jurisdiction of the court hinge upon the amount of the fine to which either of the complainants had been sentenced. The allegations of the bill show that complainants are receiving such shipments from time to time, that they are applying to them the rates established as applicable to them on their lines for foreign and interstate transportation. The

Louisiana Railroad Commission has attempted, and is attempting, to enforce as to these shipments, and all such shipments, the rate established by it and applicable only to domestic or intrastate commerce. As the Railroad Commission construes its rights and obligations, it will be its duty, as it is alleged to be its purpose, to enforce the observance of its tariff against the complainants and each of them, sentencing them from time to time to the payment of such fines as to the commission may seem adequate. We would not undertake to say, on this appeal from an interlocutory order, that the bill in this case does not set forth an injury or loss incurred or threatened in a jurisdictional amount.

We have had occasion heretofore to observe that the granting or withholding of a preliminary injunction rests largely within the sound discretion of the trial court, and its interlocutory order will not be set aside on an appeal, unless that court has erred in applying the legal principles which should have guided it in the consideration of the case as it appeared to the trial judge. When a bill is presented asserting claims involving grave questions of law and disputed issues of fact, which the court must decide before rendering a final decree, it is within the sound judicial discretion of the trial court to preserve the existing status until the case is finally decided, whenever that course is necessary to fully protect the plaintiff, or to sustain the jurisdiction of the court. Especially is this true in cases where the defendant can be fully protected against any loss by the court's requiring of the plaintiff a proper and adequate bond. Kerr v. City of New Orleans, 126 Fed. 920, 61 C. C. A. 450; Massie v. Buck, 128 Fed. 27, 62 C. C. A. 535.

The case as made by the bill, and the interlocutory decree from which the appeal is taken, is not a suit or judgment against the state of Louisiana, within the meaning of the eleventh amendment to the Constitution. Smyth v. Ames, supra; Prout v. Starr, 188 U. S. 544, 23 Sup. Ct. 398, 47 L. Ed. 584. An injunction to sustain the jurisdiction of a court already rightfully acquired and held is not forbidden by section 720 of the United States Statutes [U. S. Comp. St. 1901, p. 581]. This is so well settled as to have become elementary.

We find no error in the action of the judge of the Circuit Court for which the decree appealed from should be set aside. It is therefore affirmed.