## GEORGIA POWER CO. v. BOROUGH OF ATLANTA.

### No. 633.

District Court, N. D. Georgia.
July 14, 1931.

304

Colquitt, Parker, Troutman & Arkwright, of Atlanta, Ga., for petitioner.

Jack C. Savage, Asst. City Atty., of Atlanta, Ga., for defendant.

UNDERWOOD, District Judge.

The Georgia Power Company instituted this suit to enjoin the enforcement of an ordinance of the borough of Atlanta, requiring the company to maintain two men on each of its street cars while operating between the hours of 6 o'clock a. m. and 10 o'clock p. m., within the fire limits of the borough, and also asked for a preliminary injunction to preserve the status pending the trial and determination of the case.

The ordinance carries a penalty for each violation of a fine of not exceeding $200, or sentence to work upon the public works for thirty days, or both.

Petitioner alleges as grounds for an injunction that the borough has no power to pass such an ordinance because that power

has been vested exclusively in the Georgia public service commission, and that the ordinance is unconstitutional because unreasonable, arbitrary, and confiscatory.

On the other hand, the borough maintains that the petition does not allege a cause of action within the jurisdiction of this court; that under the borough's charter it, and not the public service commission, has jurisdiction over such matters as are covered by the ordinance; and, finally, that the enforcement of the ordinance would tend to prevent certain kinds of accidents to passengers, lessen collisional accidents with other traffic, afford better service to passengers and employees, lessen friction between the races, and speed up street traffic; and, therefore, is within its police powers.

A full hearing, upon affidavits, was had on the application for a preliminary injunction, and the question now for determination is whether same shall be granted.

From the substantial claims of unconstitutionality, raised in good faith in the petition and supported by evidence, the jurisdiction of this court seems clear. Siler v. Louisville & Nashville Railroad Co., 213 U. S. 175, 29 S. Ct. 451, 53 L. Ed. 753; Cuyahoga River Power Co. v. Akron, 240 U. S. 462, 36 S. Ct. 402, 60 L. Ed. 743; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; City of Dayton v. City Ry. Co. (C. C. A.) 16 F.(2d) 401.

It also appears from defendant's pleadings and evidence that the ordinance can be upheld, if at all, only as a reasonable police regulation, necessary for the convenience and welfare of the public. If it is such, the borough had power to enact same; if not, it is invalid and the question of whether the public service commission or the borough has jurisdiction is of no importance. Dobbins v. Los Angeles, 195 U. S. 223, 25 S. Ct. 18, 49 L. Ed. 169; City of Acworth v. Western & Atlantic R. Co., 159 Ga. 610, 126 S. E. 454; Haynes v. City of Albany, 29 Ga. App. 313, 115 S. E. 30; Macon Consolidated St. Ry. Co. v. Mayor and Council of City of Macon, 112 Ga. 782, 38 S. E. 60.

The question of the jurisdiction of this court and of the borough are therefore set to one side without further discussion, and we pass to the consideration of the real question in issue: Is the ordinance unreasonable, arbitrary, and confiscatory, or is it a reasonable provision really necessary for the peace, safety, and convenience of the

inhabitants? This requires an examination of the facts as presented by the evidence.

The evidence is voluminous, but the following appears to be a fair statement of the essential facts as shown by the evidence:

Beginning in 1925, petitioner has been gradually replacing two-men cars, until at present about 80 per cent. of the street car mileage of Atlanta is operated with the one-man cars. These cars are of the most improved type of street cars now known to the industry, and they are speedier and more easily controlled than the two-men cars. They are equipped with all approved modern devices for the safety of passengers, and have been installed at a cost of $3,200,000. One-man cars are in general use throughout the country, and have the approval of safety councils, public service commissions, and experts in the art.

The borough does not criticize the cars or ask for any change with respect to them, but only for the placement of an additional man on each car while being operated through the fire limits of the borough. Since all of petitioner's street car routes pass through the fire limits, the enforcement of the ordinance would require the maintenance of two men on all cars during said hours while they are passing through the fire limits, and it would be impractical to put on and take off men at the boundaries of the fire limits.

Petitioner's records show a speeding up of its street cars from 9.73 miles per hour in 1925, when the one-man cars began, to 9.93 miles per hour in 1931, and a great decrease, since the adoption of the one-man cars, in accidents of all kinds, as well as in passenger complaints. For example, accidents of all kinds have decreased from 5,500 in 1925 to 3,600 in 1930; collisional accidents from 3,500 in 1925 to 2,300 in 1930. All other accidents, including step accidents, and trouble with passengers, from 2,000 in 1925 to 1,000 in 1930. The number of accidents per 1,000 car hours occurring during the rush hours in the operation of one-man cars is less than the accidents occurring in the operation of two-men cars under similar conditions. To comply with the ordinance will cost petitioner $540,000 a year in wages alone of the extra men, and $240,000 more to convert the cars into two-men cars, if this should be required. The gross revenues of petitioner have greatly decreased since 1928; such revenues in 1929 being $191,135 less than in 1928, those of 1930 $458,380 less than in 1929, and those of the first three months of 1931 $176,000 less than for the corresponding months of 1930.

The foregoing facts appear from petitioner's evidence and were not disputed by defendant.

In addition to the above evidence, petitioner introduced numerous affidavits of workmen, operating officers, and others to the effect that the presence of the extra man on the one-man car would not only not add to the safety and speed of operation, but would actually increase the hazard and cause confusion and delay, and also that it is impractical to use two men on the one-man cars without converting them into two-men cars at a cost of $240,000.

Defendant's evidence consists principally of affidavits relating to specific accidents and to opinions as to the effect of one-man cars in impeding traffic more and as to their being less safe than two-men cars, and to the claim that one-man operation does not afford as good protection from disorder, race troubles, and danger of assault and robbery as operation by two men.

The affidavits relating to accidents cover fourteen accidents over a period of five years, four of which occurred outside of the fire limits of the borough and, therefore, would not come within the provisions of the ordinance. Of the ten occurring within the fire limits, one was of the class known as trouble with passengers, one a collisional accident, and the rest step accidents. Defendant contends that these accidents were due to diversion of attention of the motormen because of their other duties and would not have happened if two men had been operating the cars in question.

It also appears from the defendant's evidence that during the period from 1925 to 1931, 38 per cent. of street car stops have been eliminated and traffic lights and other traffic controls have been installed which, defendant claims, have been responsible in large measure for the decrease in the number of accidents and apparent speeding up of cars from 9.73 miles per hour in 1925 to 9.93 miles per hour in 1931. Defendant also contends that the decrease in gross revenues shows a decrease of approximately 33⅓ per cent. in the number of passengers hauled, and that this is an additional reason for the decrease in the number of accidents.

While the evidence in this case covers a wider range than the facts set out above, nevertheless a consideration of them is sufficient, without going into the more disputed

testimony, for determining the propriety of a preliminary injunction.

■ Although statements relating to the claim of confiscation, based on the estimated return on the investment and decrease in operating and net income under the ordinance, may be subject to dispute because methods of accounting and details of costs and expenses are not shown and no opportunity afforded for cross-examination, nevertheless it is apparent from the undisputed facts that the enforcement of this ordinance would impose an immediate and heavy burden on petitioner and a great financial loss that could not be recovered in the event it should finally prevail in the suit. This fact has to be taken into consideration, along with the other facts, in determining the reasonableness of the ordinance and in reaching a conclusion concerning the granting of a preliminary injunction.

■ While "every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and that it is not the province of courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community" (Dobbins v. Los Angeles, 195 U. S. 223, 25 S. Ct. 18, 20, 49 L. Ed. 169; see, also, Atlanta v. Stein, 111 Ga. 789, 36 S. E. 932, 51 L. R. A. 335; Gainesville v. Dunlap, 147 Ga. 344, 94 S. E. 247), nevertheless "all municipal ordinances based on general powers in a charter must be reasonable" (Acworth v. Western & Atlantic R. Co., 159 Ga. 610, 126 S. E. 454, 458), and "the legislative body of a municipality has no authority, under the general powers of its charter, to pass an unreasonable ordinance, and such an ordinance is null and void" (Haynes v. City of Albany, 29 Ga. App. 313, 115 S. E. 30).

■ It is true that the borough has the right to insist that street cars shall not operate in a dangerous manner "whatever may be the cost to the parties introducing the danger," but it must be shown that the danger is a real one, that the public safety requires the change, and that the relief measures adopted are necessary and reasonably adapted to remedy the evils complained of. Erie Railroad Co. v. Board of Public Utility Commissioners, 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322.

The Supreme Court have said that, in cases of this kind, "the matter of expense is 'an important criteria to be taken into view in determining the reasonableness of the order,'" and that "the question in each case must be determined in the light of all the facts, and with a just regard to the advantage to be derived by the public and the expense to be incurred by the carrier." Washington ex rel. v. Fairchild, 224 U. S. 510, 32 S. Ct. 535, 540, 56 L. Ed. 863. See, also, Atlantic Coast Line v. North Carolina C. Commission, 206 U. S. 27, 27 S. Ct. 585, 51 L. Ed. 933, 11 Ann. Cas. 398.

The Supreme Court have also held that "one whose business will suffer great and irremediable loss by the enforcement of a statute which is alleged to be unconstitutional is entitled to a temporary injunction against the enforcement of the act, pending a suit to test its constitutionality." Foster-Fountain Packing Co. v. Haydel, 278 U. S. 1, 49 S. Ct. 1, 73 L. Ed. 147. The Circuit Court of Appeals for this circuit have held to the same effect in Railroad Commission of La. v. Texas & Pacific R. R. Co., 144 F. 68.

In the case of City of Shreveport v. Shreveport Railway Co., 38 F.(2d) 945, 946, 69 A. L. R. 340, a case very similar to the one at bar, in which it was sought to enjoin an ordinance requiring two men on street cars and in which were raised all of the questions found in this case, the same Circuit Court of Appeals, in granting an injunction, say that "a city may not impose unnecessary restrictions upon lawful occupations under the guise of protecting the public interest," and that "there could be no doubt that on the showing made appellee is entitled to relief." An application for a writ of certiorari was made in the case, but denied by the Supreme Court. 281 U. S. 763, 50 S. Ct. 462, 74 L. Ed. 1172.

■ It must be remembered that the effect this ordinance might have in increasing employment, however desirable that is, cannot be considered in determining its validity, both because the borough has no power to pass such an ordinance for a purpose of this kind (City of Acworth v. W. & A. R. R. Co., 159 Ga. 610, 126 S. E. 454), and also because the ordinance does not purport to have such purpose in view. It states as the only reasons for its enactment that "the operation of what is known as one-man street cars, that is, a car wherein one man acts as both motorman and conductor, is unsafe and tends to accidents and injuries," and that

"the operation of said one-man cars tends to congest traffic."

■ While it is possible, though stoutly denied by petitioner, that the putting of an extra man on the one-man cars might add somewhat to the safety of operation, speed up traffic to some extent, and effect in some measure the other advantages claimed by defendant from such operation; nevertheless it is apparent from the evidence adduced at the hearing that there is no great emergency, that decided improvement in safety and traffic conditions under the two-men operation is problematical, that the feasibility of such operation without converting the one-man cars is doubtful, that any improvement in safety and traffic conditions which might result from the enforcement of the ordinance would be obtained at very great, if not confiscatory, cost to petitioner at a time when business and competitive conditions are causing an increasingly large decrease in gross revenues each year, that the reasonableness and validity of the ordinance are at least very doubtful, and that the public would suffer no considerable inconvenience or damage by the granting of a preliminary injunction, while the denial of same would cause great and irremediable loss to petitioner, in the event it finally prevails in the suit.

In view of these facts and upon the present record, this case seems to come clearly within the ruling of the Circuit Court of Appeals in the case of Shreport v. Shreveport Railway Co., supra, and other cases cited, and this court is of opinion that under said authorities petitioner is entitled to a preliminary injunction to preserve the status pending the trial and determination of the case. It is so decreed in the accompanying order of this date.