ALPENA PORTLAND CEMENT CO. v. BACKUS.

(Circuit Court of Appeals, Eighth Circuit. November 8, 1907.)

No. 2,515.

1. SALES—CONSTRUCTION OF CONTRACT FOR FUTURE DELIVERY—RIGHT OF RESCISSION FOR BREACH.

Defendant sold and agreed to deliver to plaintiff 100,000 barrels of cement, and plaintiff to receive and pay for the same. One-half was to be delivered the first year, and the remainder the following year, at either one of two ports on Lake Superior, at plaintiff's option. The contract contained the following provision: "Shipments to be made [by defendant] after navigation opens and continue throughout the season in 5,000 to 10,000 barrel lots as required by said second party [plaintiff]; shipments to be made on or before October 15th of each year. Said second party shall give 30 days' notice of shipments to be made, in advance." Held, that such provision contemplated shipments by water in 5,000 to 10,000 barrel lots throughout the season; that the provision for notice was for the benefit of both parties, and required plaintiff to give 30 days' notice in advance of each of such shipments, especially in view of another provision for tests of the cement requiring 28 days' time, and the taking of samples for such tests at the factory "approximately on the date that notice of shipment is given"; that the failure of plaintiff to order and give such notices covering the quantity deliverable the first season at least 30 days before October 15th was equivalent to a failure to take and receive, and justified defendant in rescinding the contract.

2. SAME—WAIVER OF BREACH.

Defendant was not estopped to rescind because of letters, written after plaintiff's default, expressing a desire for performance during the following season, where plaintiff did not accede, but insisted on immediate further shipments without the notice to which defendant was entitled.

In Error to the Circuit Court of the United States for the District of Minnesota.

Joseph H. Cobb (James D. Shearer and Martin Monaghan, on the brief), for plaintiff in error.

C. J. Rockwood (Harris Richardson and Harold C. Kerr, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge. Backus sued the cement company to recover damages for breach of contract in failing to deliver cement it

had sold him. He recovered judgment. The case turned upon the construction of the writing which fixed the relations of the parties, and the company claims that the trial court erred in that particular. By a written contract made in January, 1905, the company which was engaged in manufacturing cement at Alpena, Mich., sold and agreed to deliver 100,000 barrels of its product, and Backus purchased and agreed to receive and pay for the same. It was provided that one-half of the number of barrels of cement should be delivered in 1905, and the other half in 1906, and that the deliveries should be made at either Duluth, Minn., or Port Arthur, Ontario, at the option of Backus. The contract contained this provision:

"Shipments to be made [by the company] after navigation opens and continue throughout the season in 5,000 to 10,000 barrel lots as required by said second party [Backus]; shipments to be made on or before October 15th of each year. Said second party shall give 30 days' notice of shipments to be made, in advance."

In the latter part of July, 1905, 5,000 barrels were ordered and duly delivered; and at the request of Backus and with consent of the company the delivery of 25,000 barrels was postponed from 1905 to the season of 1906. This left 20,000 barrels to be delivered in 1905 and 75,000 barrels in the following year. In June and July, 1905, the company wrote Backus for orders for shipment of partial lots, assuming the contract was to be filled in installments, and stating that it was hampered as to storage capacity and was being pressed by boats in which transportation had been engaged. Backus, without denying the correctness of the assumption, gave reasons connected with his business for failing to give the orders. Backus gave no orders for shipment, excepting as mentioned, until September 26, 1905, when he ordered 5,000 barrels to be shipped to Duluth, one of the points named in the contract. The company refused to ship, claiming Backus had delayed too long—that it was entitled to 30 days' notice in advance, which could not then be given before October 15th, the close of the season for shipment. In November, 1905, the company notified Backus it had declared the contract forfeited for the reason that he had committed a breach of it and that it would make no more deliveries. Shortly afterwards Backus brought the action. There was much correspondence between the parties, but all the facts material to our inquiry have been stated. We may add, however, that a letter from Backus, dated September 14, 1905, is not regarded as containing a direction for shipment under the contract.

Did the contract contemplate fulfillment by continuous shipments throughout the season of 5,000 to 10,000 barrel lots, and that Backus should give 30 days' notice in advance of each shipment ordered? If so, Backus was in default in September when he pressed the company for delivery. On the other hand, was the provision for shipments in the lots specified for the benefit and convenience of Backus alone, and was the company obligated to ship on October 15th, without previous notice, all of the 1905 cement not previously sent on orders from Backus? If so, Backus was not in default. The trial court adopted the latter view, and so instructed the jury that, after disposing of an-

other question not necessary to mention, nothing was left them but the assessment of damages. The court held that the words "in advance," at the end of the above excerpt from the contract, applied to the shipments and not to the notice, and as so construed it provided that 30 days' notice should be given of advance shipments required; that is to say, only such shipments as were ordered to be made prior to October 15th.

It was contemplated that the company should make shipments by water, and the period therefor was limited from the opening of navigation to the 15th of October. It could not have been required to ship earlier or later than the time mentioned. Two places of delivery were specified, the option of selection being with Backus; but he could not require delivery elsewhere. It was provided that shipments were to be made, after navigation opened and to continue throughout the season, in 5,000 to 10,000 barrel lots as required by Backus. There is reason for saying that the option of Backus in this respect was as to the size of the shipments within the limits specified, and perhaps, also, as to just when they should be made, but not whether there should be shipments at all before the end of the season. Otherwise, why should it have been provided that the shipments were to continue throughout the season? If Backus alone had control of the matter of time, he could have required continuous shipments without definite provision to that effect in the contract. Backus was required to "give 30 days' notice of shipments to be made, in advance." It can as well be said that the notice was to be in advance of shipments required as that it applied only to advance shipments. We do not think the structure of the sentence makes the latter construction preferable. It is said that "in advance" would be unnecessary to the notice as it would be implied—that 30 days' notice means 30 days' notice in advance. It is common practice, however, in drafting instruments providing for notice, to say that it shall be given before or prior to or in advance of the day or happening to which it relates. It is certain that some sort of notice by Backus was always and in every event necessary; otherwise, the company would not know whether to ship to Duluth or to Port Arthur. The warehousing of such a large quantity of cement at the factory after it was manufactured and the securing of space in vessels for water carriage furnish substantial arguments that the provision for shipments from time to time during the season and notice was in part at least for the benefit of the company.

But there are other provisions which we think make the construction altogether clear. It was provided in the contract that the cement should "bear the test and specifications according to the specifications hereto attached," and it was provided in the specifications attached that the cement should be sampled for test at the factory "approximately on the date that notice of shipment is given" by Backus. The sampling for a test was not the test itself. The sampling was but a preliminary step. The test came afterwards. The samples were to be tested either at the laboratory of the company, or at the office of Backus' engineer in New York City, or elsewhere, as he might elect. To test the soundness of the cement, and to determine whether it would

show distortion or cracks in use, it was specified that a pat of neat cement mixed with water should be allowed to set and then be placed in fresh water for 28 days. It appeared from the evidence that different lots of cement manufactured by a single concern were not always of uniform, unvarying quality. After being ground, the cement had to be cured and ripened to fit it for the market, and weather conditions had an effect upon the duration of that process. It was important to the company that the quality of the cement, which was required to be of a fixed standard, should be determined before it was shipped to distant points; otherwise, it might be rejected there and left upon its hands. So it was provided that the cement should be sampled, approximately on the day that notice of shipment was given, and this, being 30 days in advance, opportunity was given for the tests required. That in the course of performance of the contract Backus might waive the tests does not affect the relevance of these provisions to the construction of the language employed. Notice in advance was of benefit to the company, and it was indispensable to compliance with positive requirements of the contract. We think that the company was entitled to 30 days' notice in advance of every shipment ordered. This was the position it consistently maintained in its correspondence, and it was not until September that Backus took exception to it. When he did so, it appeared from his letter that the market for cement had stiffened.

A failure to order and give notice as required by the contract was equivalent to a failure to take and receive. The contract was a sale and purchase of 100,000 barrels of cement. It was not divisible into separate contracts for lots of 5,000 to 10,000 barrels each, or for 25,000 barrels in 1905 and 75,000 in 1906. The failure of Backus to take and receive 20,000 barrels in 1905 in the manner and during the time prescribed by the contract set the company free, and it seasonably asserted its right.

In Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366, a contract was made for the sale and delivery at Philadelphia of 5,000 tons of iron rails to be shipped from European ports at the rate of "about 1,000 tons" per month, beginning February; shipments to be completed not later than July. The seller shipped 400 tons in February and 885 tons in March, when about the time of the receipt of the March shipments the purchaser rescinded the contract for failure to deliver in the quantity contracted for. The court, after observing that time is of essence in the contracts of merchants, held that:

"A statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, in the sense in which that term is used in insurance and maritime law: that is to say, a condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract."

It was also said:

"The plaintiff, instead of shipping about 1,000 tons in February and about 1,000 tons in March, as stipulated in contract, shipped only 400 tons in February and 885 tons in March. His failure to fulfill the contract on his part in respect of these first two installments justified the defendants in rescinding the whole contract, provided they distinctly and seasonably asserted the right of rescission."

See, also, Cleveland Rolling Mills v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920.

In Hoare v. Rennie, 5 H. & N. 19, a leading case, cited with approval in Norrington v. Wright, there was a contract whereby plaintiffs sold to defendants for delivery in London 6,660 tons of iron to be shipped from Sweden in the months of June, July, August, and September in about equal portions each month. In June plaintiffs shipped but a small quantity, and the defendants refused to receive the same, and also gave notice that they refused to receive the residue of the iron. It was held that the plaintiffs could not recover.

In Honck v. Muller, 7 Q. B. D. 92, there was a contract for the sale of 2,000 tons of pig iron to be delivered "in November, or equally over November, December, and January next." The purchaser failed to take any iron in November, but demanded delivery of one-third in December and one-third in January. It was held that the seller was justified in rescinding the contract. This case is also cited with approval in Norrington v. Wright, while Mersey Co. v. Naylor, 9 App. Cas. 434, decided by the House of Lords was distinguished. This latter case and those following its doctrine are relied on by counsel for Backus in the case at bar. The rule of Norrington v. Wright has been applied many times by our courts, national and state.

It is contended that by expressions in letters commencing with one written September 18, 1905, the company waived the right to declare the contract at an end. It does appear that at first the company was averse to canceling the contract, meaning in its entirety, especially in view of the basis of cancellation demanded by Backus a few days previous. Shortly afterwards it expressed a desire to keep the contract alive for the deliveries of 1906; but Backus, who had already defaulted, did not accept or act upon the suggestion. Then was the time for adjustment; but his position was wholly antagonistic. He insisted upon immediate further shipments, without the notice upon which alone the company was called upon to make them, and threatened to buy in the open market for its account. While he was in that attitude the company asserted its right to full rescission. It had not precluded itself from doing so.

The judgment is reversed, and the cause remanded for a new trial.