PIKE'S PEAK HYDRO–ELECTRIC CO. v. POWER & MINING MACHIN-
ERY CO.

(Circuit Court of Appeals, Eighth Circuit.   November 16, 1908.)

No. 2,626.

CONTRACTS (§ 163*)—CONSTRUCTION—WRITTEN AND PRINTED PROVISIONS.

In a contract to furnish and install certain machinery, made on a print-
ed form prepared by the contractor, a provision written in that "time is
of the essence of this contract" *held* to control a provision of the print-
ed part that the contractor should not be liable for damages on account
of delays, and to entitle the other party to maintain an action for dam-
ages resulting from the failure of the contractor to perform the contract
within the time limited therein.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 745; Dec. Dig.
§ 163.*]

Appeal from the Circuit Court of the United States for the District
of Colorado.

K. C. Schuyler (W. F. Schuyler, on the brief), for appellant.
John R. Smith and John F. Shafroth, for appellee.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, Dis-
trict Judge.

HOOK, Circuit Judge.   The principal question in this case is wheth-
er the appellee is liable in damages for failure to perform a contract
within the time limited, and it depends upon the proper construction
of stipulations in the contract which are apparently contradictory.
The Pike's Peak Hydro-Electric Company was about to build a plant
for generating electric power near Manitou, Colo., and to make use
of the waters on the east slope of Pike's Peak at a high elevation by
conducting them through a precipitous pipe line several thousand
feet down the mountain side to the water wheels below.   It entered
into negotiations with the Holthoff Machinery Company, of Wiscon-
sin, for the delivery and installation of "a riveted hydraulic pipe line."
After preliminary conferences and discussions the representatives of
the two companies reached a conclusion, and a contract was made
which took the form of a proposition by the machinery company and
an acceptance thereof by the electric company.   The proposition was
prepared by the machinery company upon a printed form in general
use in its business.   The special provisions relating to the work to be
done for the electric company, its character, the time when shipments
from Wisconsin to Colorado were to begin and be concluded, the com-
pletion of the installation thereafter, the total price to be paid by the
electric company, the distribution of the payments, and other particular
details were inserted in typewriting in the blank spaces of the printed
form.   Among the written insertions was the following:

"It is agreed that the payment of 25 per cent. of contract price within 15
days after the acceptance of this proposal is made on condition that deliv-
eries will be made as specified, and that time is of the essence of this con-
tract."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the body of the printed matter were these provisions:

"We assume no liability for damages on account of delays, nor will we make any allowance for repairs or alterations, unless same are made with our written consent or approval. We will furnish or repair any material which is proved within one year after starting in to have been defective at the time we furnish it, but no liability shall attach to us on account of damages or delays caused by such defective material."

Also:

"This contract is contingent upon strikes, fires, accidents, or other delays unavoidable or beyond our reasonable control."

The electric company made the first payment of 25 per cent. of the contract price as provided by the written clause above copied, but the hydraulic pipe line was not delivered and installed for more than a year after the time specified, and damages are claimed for the delay. The present appellee took the place of the machinery company in the contract and is subject to its obligations.

The different provisions of a contract are to be so construed that effect may be given to all of them, if it is possible to do so, having due regard to the subject-matter and the clear purposes of the parties; but where a contract is prepared upon a printed form, and there is a conflict between a provision in print and one in writing that cannot be harmonized or reconciled, the latter prevails over the former, as being that to which attention was more directly given, or as being expressive of the final intent of the parties. The appellee contends that the provision in writing that time was of the essence of the contract and the one in print that no liability for damages on account of delays was assumed can be reconciled, so that effect may be given to each. It says: There are two distinct remedies for the breach of a contract of which time is of the essence: First, the right of rescission; second, the right to compensatory damages. That the written provision, standing alone, would authorize the adoption of either remedy by the electric company; but that the purpose of the printed provision was to take away the right to recover damages, leaving unimpaired the right to rescind. We very much doubt that such a construction as this would ever occur to one not skilled in the niceties of the law, and we think, if such had been the intent of the contracting parties, it would not have been expressed in terms so uncertain and ambiguous. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366, is relied on by appellee. It was there held that time is of essence in the contracts of merchants, and the failure of a vendor to comply with provisions in a contract of sale fixing times for delivery authorized a vendee to repudiate the contract. But, if applicable at all, the case makes against the appellee here, because in the contract before us the times of deliveries and completion are definitely specified, and if the provision as to time being of the essence be confined to the remedy of rescission it is surplusage. See Alpena Portland Cement Co. v. Backus, 84 C. C. A. 444, 156 Fed. 914. In other words, time of delivery in contracts like that in Norrington v. Wright is regarded as of the essence, though not affirmatively expressed as being so.

The second printed provision, that the contract should be contingent upon strikes, fires, accidents, etc., casts doubt upon appellee's construction. Its evident purpose was to make an exemption from liability for delays resulting from the causes specifically enumerated. To be consistent, therefore, the contention of appellee must be as follows: Standing alone, the written clause authorized either rescission or damages for delay in performance. The first printed clause took away the right to damages, but left that of rescission; while the second printed clause took away the right of rescission for delays caused by strikes, fires, accidents, etc. This is much too refined to be adopted. Regarding the position of the parties, the objects sought by them, and the entire context of their contract, it is altogether clear that no such construction was in the mind of any one who had to do with the transaction. It is to be observed that in making its contention the appellee detaches the clause, "We assume no liability for damages on account of delays," from the remainder of the sentence, which deals with repairs and alterations, and from the remainder of the paragraph, which relates to defective materials. Giving to the provision that deliveries will be made as specified and that time is of the essence of the contract the comparative importance it is entitled to, because in writing, and also bearing in mind that the instrument to be construed is the work of the machinery company, and the rule that doubts in construction should be resolved more strongly against him who prepares the contract, we think the exemption from liability for damages may more reasonably be said to relate to delays made necessary by repairs or alterations.

The trial court, having construed the contract differently, did not consider the matter of damages caused by delay in performance; and, though the record here contains much testimony upon that subject, we refrain from examining it. The Circuit Court is primarily the trier of the facts, and in a case of this character we are entitled to the benefit of its judgment. We also refrain from considering the questions of minor or subordinate importance before the principal issues in the case have been heard and disposed of.

The judgment is reversed, and the cause is remanded for a rehearing upon the same testimony, or with such additional testimony as the trial court may allow to be taken.