SHUBERT et al. v. WOODWARD et al.†

(Circuit Court of Appeals, Eighth Circuit. February 4, 1909.)

No. 2,954.

1. APPEAL AND ERROR (§ 100*)—ORDER FOR PRELIMINARY INJUNCTION WHERE OPPOSING AFFIDAVITS DISREGARDED A "HEARING IN EQUITY" APPEALABLE.

Where, in response to an order to show cause why an injunction should not issue, the defendants present admissible opposing affidavits and letters, the court refuses to read or hear them, and orders an injunction until the further order of the court, there is a hearing in equity within the meaning of Act April 14, 1906, c. 1627, 34 Stat. 116 (U. S. Comp. St. Supp. 1907, p. 208), and the order is appealable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 673; Dec. Dig. § 100.*]

2. APPEAL AND ERROR (§ 837*)—SUCH AFFIDAVITS AND PROOFS CONSIDERED IN APPELLATE COURT.

Pertinent affidavits and admissions constitute competent evidence in opposition to an application for an injunction, and, although disregarded by the trial court, they must be considered by the appellate court, for the only question in that court is whether or not the order below is sustained by the admissible evidence in the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3263, 3276; Dec. Dig. § 837.*

Additional proofs in appellate court without trial de novo, see note to Ridge v. Manker, 67 C. C. A. 600.]

3. APPEAL AND ERROR (§ 863*) — ON APPEAL FROM TEMPORARY INJUNCTION OR RECEIVERSHIP APPELLATE COURT MAY DETERMINE EQUITY OF BILL.

Where, on an appeal from an order for a preliminary injunction or from an order appointing a receiver, the equity of the bill is challenged upon substantial grounds, the appellate court may, and it should. consider the question, whether the court below has done so or not, and if it is of the opinion that the relief sought cannot be ultimately granted it should so decide, to the end that all parties may be saved further expense over the endeavor to secure impossible relief.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3450; Dec. Dig. § 863.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied February 18, 1909.

4. INJUNCTION (§ 59*) — AGAINST BREACHES OF A CONTRACT IS SPECIFIC PERFORMANCE OF IT.

An injunction against all breaches of a contract is in effect a decree for its specific performance, and the general rule is that the power and the duty of a court of equity to grant one is measured by the same principles, rules, and practice as its power and duty to grant the other.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 114; Dec. Dig. § 59.*]

5. SPECIFIC PERFORMANCE (§ 8*)—INJUNCTION (§ 135*)—DISCRETION OF COURT.

The specific performance of contracts and the issue of injunctions are not matters of right. They rest, not in the arbitrary or whimsical will, but in the judicial discretion, of the court, informed and guided by the established principles, rules, and practice in equity, which are advisory rather than mandatory.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 17, 18; Dec. Dig. § 8;*   Injunction, Cent. Dig. § 304; Dec. Dig. § 135.*]

6. SPECIFIC PERFORMANCE (§ 32*)—MUTUALITY OF OBLIGATION AND REMEDY ORDINARILY ESSENTIAL TO SPECIFIC PERFORMANCE.

The general rule is that specific performance of a contract will not be enforced by a court in favor of a party to it against whom the court has no power to effectually compel its performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 89; Dec. Dig.' § 32.*]

7. SPECIFIC PERFORMANCE (§ 73*)—CONTRACTS FOR PERSONAL SERVICES NOT GENERALLY SPECIFICALLY ENFORCEABLE.

The general rule is that courts of equity will not by order, decree, or injunction attempt to compel one to perform a contract to employ, or to continue the employment of, a servant or officer to render personal services which require the exercise of cultivated judgment, special knowledge, experience, skill, or taste, because they are without adequate power to compel such a servant or officer to perform such services effectually.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 206; Dec. Dig. § 73.*]

8. SPECIFIC PERFORMANCE (§ 75*)—CONTRACTS FOR SERIES OF ACTS THROUGH MANY YEARS NOT GENERALLY ENFORCEABLE.

The general rule is that courts of equity will not enforce the specific performance of a contract, in the absence of a public interest or other controlling equities, where such performance cannot be compelled by a speedy final decree, but will entail upon the courts through many years the supervision and direction of a continuous series of acts involving many details, and will require the frequent exercise of judgment and special knowledge or experience.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 210; Dec. Dig. § 75.*

Of contracts requiring performance of continuous acts, see note to Berliner Gramophone Co. v. Seaman, 49 C. C. A. 103.]

9. SPECIFIC PERFORMANCE (§ 99*)—INJUNCTION—PARTY IN DEFAULT.

Courts of equity will not ordinarily compel the specific performance of a contract by decree or by injunction against its violation at the suit of a party who is guilty of substantial breaches of it.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 300; Dec. Dig. § 99.*]

10. SPECIFIC PERFORMANCE (§ 16*)—INJUNCTION (§ 136*)—DENIED WHERE GREATER INJURY PROBABLE FROM GRANT THAN FROM REFUSAL—GRANTED WHERE INJURY FROM REFUSAL GREAT AND CERTAIN, AND FROM GRANT SLIGHT AND REMEDIABLE.

Where the record shows that greater wrong and injury is likely to be inflicted upon the opposing party by granting a decree of specific per-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

formance or an application for an injunction than the moving party will suffer from its refusal, a court of equity should generally deny it.

But where the injury to the moving party from a denial will be immediate, certain, and great, while the loss or inconvenience to the opposing party from its grant will be comparatively small and susceptible to indemnification by a bond, and the questions involved are grave and difficult, a temporary injunction will generally be granted and sustained to maintain the status quo.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 35; Dec. Dig. § 16;* Injunction, Cent. Dig. § 306; Dec. Dig. § 136.*]

11. INJUNCTION (§ 137*) — RECEIVERSHIP — SPECIFIC PERFORMANCE — FACTS — CONCLUSIONS.

A corporation, the owner of a theater, and the defendants, the owners of another theater, agreed that for five years the theaters should be separately operated under the control and supervision of the corporation; that W., its president, was appointed the representative of the corporation at a salary of $50 per week, and that he was appointed the representative of the defendants at a like salary to be the general manager of the enterprises subject to the direction and orders of the defendants; that the defendants should appoint a treasurer of their theater, who should act under the supervision of the corporation; that the funds derived from their theaters should be deposited to their account; that they should pay the rent of their theater, and should cause it to be booked and played 30 weeks each season under a penalty of $1,000 per week to be paid into the general fund; and that at the end of each year the profits derived from the two theaters should be put into a general fund, and that fund and the losses, if any, should be equally divided between the corporation and the defendants. W. was not a party to the contract. The defendants put the corporation and W. in possession of their theater, but W. disobeyed their orders relative to the scale of prices for admission to their theater, the day of the midweek matinee, the hiring and discharge of employés and the handling of the fund derived from their theater, and they discharged him and went into possession. The corporation and W. exhibited a bill for an injunction against the violation by the defendants of the contract and their interference with the possession, control, and management of their theater by the complainants, wherein they alleged that unless an injunction was issued they would sustain irreparable injury, in that they had incurred expenses in preparing to operate the theater, and in that they would lose profits to the amount of perhaps $250,000. The defendants presented opposing affidavits and letters. Complainants obtained a temporary injunction as prayed, and an order appointing W. manager of their theater, and the defendants appealed.

Held: There was no such equity in the bill as would sustain the injunction sought, because the contract lacked mutuality of obligation and of remedy, because a grant of the relief would entail upon the courts for many years the supervision of a continuous series of acts, and would require the frequent exercise of judgment and special knowledge or experience, and there was no public interest and no controlling equities demanding it, and because greater wrong and injury would probably be inflicted upon the defendants by its grant than the complainants would suffer from its refusal.

(2) For the same reasons, and because the record, including the opposing affidavits and letters, convinces that the complainants had committed substantial breaches of the contract before they filed their bill, the injunctional orders and the order appointing W. general manager cannot be sustained, and the complainants should surrender the possession of the theater to the defendants.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 307; Dec. Dig. § 137.*]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of Missouri.

This is an appeal from an order granting a temporary injunction against the breach by the appellants of an agreement made on May 4, 1908, between the Woodward & Burgess Amusement Company, the complainant below, and the defendants and appellants, Lee Shubert and Jacob J. Shubert, relative to the operation of two theaters at Kansas City owned by them respectively. By that contract the amusement company agreed that it had a lease of its theater for 10 years, that it would pay the rent under that lease, and that its theater should be operated as a place of amusement at prices of admission which should not be higher than $2 nor lower than 25¢. The Shuberts agreed that they had a lease for 10 years of their theater, that they would pay the rent under that lease, that they would cause their theater to be carried on as a place of amusement at prices of admission not higher than $1 nor lower than 25¢, that they would fill at least 30 weeks each season at their theater, and would pay into the general fund $1,000 for each week less than 30 booked and played therein. The amusement company drew the contract, and submitted it to the Shuberts for signature. The Shuberts wrote into the fourth and eighteenth paragraphs of it the words underlined below, and then the contract was signed. The fourth, seventh, eighth, and eighteenth paragraphs read in this way:

"Fourth. The party of the first part hereby appoints and designates O. D. Woodward as its representative at the salary of $50 per week and the second parties hereby appoint and designate O. D. Woodward as their representative at a salary of $50 per week to be the General Manager of the enterprises herein referred to. *But said representative to be subject to direction and orders from the 2nd party hereto.*"

"Seventh. The party of the first part agrees to take general supervision and control of both of said theaters and the business in connection therewith and to make no charges for its services in so doing.

"Eighth. It is further agreed that the parties of the second part shall name and appoint a treasurer for the Sam S. Shubert Theater in Kansas City, Missouri, said treasurer to be under the supervision of the party of the first part *but who shall have no power to discharge said treasurer.*"

"Eighteenth. The Shubert Theater is to be booked in the offices of Lee & J. J. Shubert in New York City, all contracts to go to O. D. Woodward for approval and signature; the house program to carry the announcement 'Under the Management of the Woodward & Burgess Amusement Company and Lee and J. J. Shubert.' *All funds of the Shubert Theater shall be deposited by the treasurer thereof to the credit of the Shubert account and surplus distributed at end of season as herein provided.*"

The parties further agreed by this contract that there should be charged into the general expenses of each of the theaters $20,000 per year as rental therefor; that each of the theaters should keep true books of account of all moneys received and paid out, should send daily statements of its receipts and weekly statements, which should show its profits and losses to each of the parties; that each of the theaters should be operated as an independent enterprise; that on June 30th of each year the profits or losses of each theater should be ascertained; that the net profits of both theaters should be paid into a general fund, and should be divided equally between the parties to the contract, and that the losses of both theaters should be divided in the same way; and that the term of the agreement should be five years, and the amusement company should have the option to continue the term for five years longer.

O. D. Woodward was and is the president of the amusement company, and in May, 1908, the Shuberts placed the amusement company and Woodward in possession of their theater, and they proceeded to prepare it for the season commencing in September, 1908. Before the 3d day of September, 1908, numerous controversies arose between the parties respecting the authority of the Shuberts to order and direct the course of management of their theater under the contract. Woodward and the amusement company disobeyed Shuberts' orders in relation to the price of admission, the matinee days, the

employés, and the expenditure of the fund deposited to the credit of the Shubert account. Thereupon the Shuberts discharged Woodward, and on September 3, 1908, the amusement company, and Woodward exhibited their bill in one of the courts of the state of Missouri, in which they set forth the contract, alleged that the Shuberts were about to break it and to take possession of their theater, that this action would result in irreparable injury to the complainants, and prayed that the Shuberts and C. A. Bird, their agent, might be enjoined from violating the contract and from interfering with the possession, control, and management of the Shubert Theater. The court restrained the defendants from taking possession of their theater, and ordered them to show cause why an injunction should not issue as prayed. The suit was then transferred to the United States Circuit Court below, where on September 10, 1908, the order to show cause came on for hearing pursuant to due notice. On that hearing the defendants, in answer to the order to show cause and in opposition to the order for the injunction, filed and presented to the court below 10 affidavits and more than 20 letters between the parties, but the court declined to read them or to hear them. The complainants, probably for that reason, presented no affidavits in response, and the court on September 14 and September 23, 1908, granted and continued an injunction against the violation of the contract by the defendants. On October 2, 1908, the fact that the parties were unable to agree what the contract meant and what acts were in violation of it was made to appear to the court, and it thereupon appointed Woodward general manager of the defendants' theater, and authorized and directed him to manage it according to the terms of the contract, and authorized the defendants to appoint a treasurer for this theater, and it appointed a master to determine what disputed expenses incurred by Woodward should be paid by the treasurer. The defendants appealed from the orders of September 14th and 23d and October 2d.

The order granting the injunction was made on September 14, 1908, and was amended on September 23, 1908. At the time these orders were made, the rights of the parties relative to the order for injunction were measured by the proofs presented by the complainants' bill filed on September 14, 1908, under an order of repleader and the letters and affidavits presented by the defendants in answer to the order to show cause. In that bill the complainants set forth the contract, alleged that under it they were entitled to the possession and management of the Shubert Theater for five years, with an option of an extension of the term for five years more; that they entered into the possession and control of the theater in June, 1908; that they hired the employés, advertised the theater, and expended a great deal of time and labor about the details necessary to perform the contract; that they were about to open the theater on September 6, 1908; that the defendants were seeking to disregard the contract with the amusement company, and to deprive Woodward of his rights under the contract, and were threatening and attempting to take exclusive possession of the theater, to discharge the employés hired by the complainants, and to prevent them from proceeding under the contract. They alleged that they had spent a great deal of time and money in carrying out the contract, and that if the defendants were permitted to disregard it the complainants would suffer great financial loss, permanent damage, and irreparable injury; that the profits by the operation of the contract during the time named therein would probably be very large, exceeding perhaps $250,000, but that from the fact that they were all prospective there was no way by which the damage to the complainants could be ascertained if the acts of the defendants were permitted to continue. And they prayed for an injunction against the defendants enjoining them from disregarding the contract and from interfering with the possession, control, and management of the Shubert Theater under the contract, and from interfering with the rights of the complainants thereunder.

The opposing affidavits proved that before the original bill was filed the complainants had disobeyed the order of the Shuberts, which prescribed the scale of prices for admission to the Shubert Theater within the limits fixed by the contract, and that they had prescribed other prices which would in many instances cause a difference in the gross receipts of the theater of as much as $1,000 for a week's engagement, and might easily convert what ought

to have been a profit into a loss; that the complainants had shifted the midweek matinee of the Shubert Theater from Wednesday to Thursday in violation of the direction of the Shuberts, and that this change would greatly diminish the earnings of the theater; and that Woodward had refused to recognize the right of Miller, the treasurer of the Shubert Theater, appointed by the Shuberts pursuant to the contract, to determine the validity of claims against the funds deposited to the credit of the Shuberts' account under the nineteenth paragraph of the contract, and his right to sign the checks thereon, and had insisted that Woodward had the right to sign checks and handle the house along the same lines as he handled every other house with which he was connected; that thereupon the Shuberts had discharged Woodward and had taken possession of the Shubert Theater.

James C. Jones and J. C. Rosenberger (Jones, Jones, Hocker & Davis and Kersey Coates Reed, on the brief), for appellants.

John H. Lucas (Thompson, Stanley & Price and Johnson & Lucas, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). The complainants pray in their bill, and the orders challenged grant, a temporary injunction against the violation by the defendants of the contract of May 4, 1908. The act of Congress which confers jurisdiction of appeals from orders granting or continuing injunctions provides that an appeal may be taken where "upon a hearing in equity" such an order is made (Act April 14, 1906, c. 1627, 34 Stat. 116 [U. S. Comp. St. Supp. 1907, p. 208]), and counsel insist that these orders are not appealable, (1) because they grant an injunction until the further order of the court, but an injunction until the further order of the court is equally appealable with one until a time certain, and (2) because when the defendants presented their affidavits and letters in answer to the order to show cause why the injunction should not issue against them, the court declined to hear these affidavits and letters or to hear counter affidavits which were not prepared and hence do not appear in the record, and granted the injunction without regard to these proofs for the purpose of maintaining the existing state of affairs until the validity and construction of the contract could be judicially determined at the final hearing of the suit. But the affidavits and letters presented by the defendants constituted admissible evidence in their behalf in opposition to the order for the injunction. Either party may read pertinent affidavits and admissions at such a hearing. Equity Rule 55; Bates on Federal Equity Procedure, § 534; 3 Daniell, 275, 297. These affidavits and letters were introduced in response to the order to show cause at the proper time in the presence of the court and counsel, and at the hearing upon which the court decided to grant the injunction. A hearing by a federal court in equity at which the admissible evidence of a litigant is disregarded and an order or decree is rendered against him is no less a hearing in equity than one in which his evidence is considered, and the orders granting the injunction were appealable.

Moreover, whether the court below considered the affidavits and letters or not, the appellate court may not lawfully disregard them.

because upon an appeal in equity the question always is in a national appellate court whether or not the order or decree challenged is sustained by the competent and relevant evidence presented by the record before it. Blease v. Garlington, 92 U. S. 1, 8, 23 L. Ed. 521; First National Bank v. Abbott (C. C. A., filed November 24, 1908) 165 Fed. 852; Missouri American Electric Co. v. Hamilton Brown Shoe Co. (C. C. A., filed November 16, 1908) 165 Fed. 283; Dreutzer v. Frankfort Land Company, 65 Fed. 642, 644, 13 C. C. A. 73.

The injunctional orders in this case are unique. They enjoin the defendants from interfering with such management and control of the Shubert Theater by the complainants "as is granted unto complainants in and by the written instrument set out in plaintiffs' petition," and they enjoin the complainants from interfering with the management of the theater, "except under the exact terms specified in the contract made between the parties," declare that it is the express object of the orders "to compel a strict observance of the rights granted by and the obligations incurred by the terms employed in the contract until its validity or invalidity may be determined on full proofs by final decree," and that in case dispute should arise between the parties, application may be made to the court for temporary construction of the contract and for further orders. When these orders were made on September 14th and September 23d respectively, the record was replete with proof that an irreconcilable conflict had arisen between the parties over the construction of the contract before the suit was commenced; and on October 2, 1908, upon further application, the court ordered that Woodward should exercise the powers of general manager of the theater and of its business, "subject, however, to the provisions of the contract in all respects"; that the defendants' treasurer should exercise the powers of a treasurer; that disputes about claims for expenses should be determined by a special master who was appointed by the order; and that the purpose of the order was "to preserve the status of the property and require the operation and conduct of the business of the Shubert Theater in strict accordance with the contract between the parties." It is clear from a review of these orders that their legal effect was to enjoin the defendants from committing any breach of the terms of the agreement of May 1, 1908.

An injunction against the breach of a contract is a negative decree of specific performance of the agreement, and the general rule is that the power and the duty of a court of equity to grant the former is measured by the same rules, principles, and practice as its power and duty to grant the latter relief. 4 Pomeroy's Equity Jurisprudence (3d Ed.) § 1341; General Electric Co. v. Westinghouse Elec. & Mfg. Co. (C. C.) 144 Fed. 458, 463; Welty v. Jacobs, 171 Ill. 624, 631, 49 N. E. 723, 40 L. R. A. 98; Chicago Municipal Gas Light Co. v. Town of Lake, 130 Ill. 42, 60, 22 N. E. 616. This, like most general rules, is not without its exceptions, under which injunctions may be lawfully issued to restrain the performance of specific acts in violation of agreements whose specific performance the courts would not completely enforce, as where certain acts violative of an agreement con-

stituted an infringement of complainant's patents (General Electric Co. v. Westinghouse Electric Co. [C. C.] 151 Fed. 664, 675), or a breach of a partnership agreement (Leavitt v. Windsor Land & Investment Co., 54 Fed. 439, 443, 4 C. C. A. 425), although a court of equity will not enjoin all breaches of a partnership agreement and in that way enforce specific performance of it (Marble Co. v. Ripley, 10 Wall. 339, 350, 19 L. Ed. 955), or the violation of a negative covenant, express or implied, where the prohibition will have the effect or tendency, as in the case of a singer's or of a ball-player's contract, to compel performance of the agreement (Lumley v. Wagner, 1 De Gex, M. & G. 604; Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 Atl. 973, 974, 58 L. R. A. 227, 90 Am. St. Rep. 627; Singer Sewing-Machine Co. v. Union Button Hole & Embroidery Co., 1 Holmes, 253, 22 Fed. Cas. No. 12,904; Chicago & A. R. R. Co. v. N. Y., L. E. & W. R. R. Co. [C. C.] 24 Fed. 516, 520; McCaull v. Braham [C. C.] 16 Fed. 37; Goddard v. Wilde [C. C.] 17 Fed. 845); but a prohibition of the complainants from managing other theaters would have no tendency to compel them to manage the Shubert Theater according to the agreement, and in the absence of such a tendency this contract lacks mutuality, or where the validity of the contract conditions the right to the possession and a court forbids a forcible taking until the soundness of the agreement can be determined (Western Union Co. v. St. J. & W. Ry. Co. [C. C.] 3 Fed. 430), but the validity of this contract is not determinative of the right of possession of the Shubert Theater. The case at bar does not fall under any of these exceptions, and it is governed by the general rule. The bill is not leveled at any specific violation or any specified series of breaches of the agreement. It charges that the defendants are seeking to disregard their contract, and it prays for a single relief, and nothing more, that the defendants may be enjoined "from disregarding said contract, and from interfering, or attempting to interfere, with the possession, control, and management of said Shubert Theater under said contract, or in any way interfering with the rights of these complainants thereunder." It is a bill for the complete specific performance of the contract by injunction, and the orders for the temporary injunction are as broad as the bill. Neither the bill nor the orders for the injunction can be successfully maintained unless it was the duty of the court below upon the record before it to compel temporarily the specific performance of the contract.

The specific performance of a contract by a court of equity is not a matter of right. It rests in the discretion of the court, not in its arbitrary whimsical will, but in its sound judicial discretion informed and directed by the established principles, rules, and practice of equity jurisprudence. Hennessey v. Woolworth, 128 U. S. 438, 442, 9 Sup. Ct. 109, 32 L. Ed. 500. Nor are these principles and rules and this practice hard, fast, or without exception. They are rather advisory than mandatory, and the application of the rules and of their exceptions to each particular case as it arises is still intrusted to the conscience of the chancellor. Yet these principles and rules and this practice serve to inform the intellect and to enlighten the conscience,

and by them the judicial discretion of the court must be guided. Federal Oil Co. v. Western Oil Co., 121 Fed. 674, 676, 57 C. C. A. 428.

Specific performance will not ordinarily be decreed in favor of a party to a contract against whom the court cannot efficiently compel its performance. The obligation and the remedy under the contract must be mutual. 2 Beach on Contracts, 885, and note 1; Marble Co. v. Ripley, 10 Wall. 339, 358, 19 L. Ed. 955; Fry on Specific Performance of Contracts (3d Ed.) §§ 440, 441; Welty v. Jacobs, 171 Ill. 624, 49 N. E. 723, 40 L. R. A. 98; Lancaster v. Roberts, 141 Ill. 213, 223, 33 N. E. 27; Chicago Municipal Gas Light & Fuel Co. v. Town of Lake, 130 Ill. 42, 60, 22 N. E. 616; Ogden v. Fossick, 32 L. J. Eq. (N. S.) 73; Buck v. Smith, 29 Mich. 166, 18 Am. Rep. 84; Richmond v. R. R. Co., 33 Iowa, 422. There are exceptions to this rule, as where the specific performance of the complainant's covenants which are not susceptible to enforcement by the court has been completed before he institutes his suit. Burnell v. Bradbury, 67 Kan. 762, 764, 74 Pac. 279; Bigler v. Baker, 40 Neb. 325, 333, 334, 58 N. W. 1026, 24 L. R. A. 255; Green v. Richards, 23 N. J. Eq. 32, 35; Boyd v. Brown, 47 W. Va. 238, 249, 34 S. E. 907. But in the case at bar the complainants have not substantially performed their part of the contract, nor can they do so for more than four years to come. There are authorities in which courts have sought and found some reason or excuse in the particular facts of cases to take them out of the rule, as in Jones v. Williams, 139 Mo. 1, 92, 39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 Am. St. Rep. 436, and Joy v. St. Louis, 138 U. S. 1, 50, 11 Sup. Ct. 243, 34 L. Ed. 843. But it is both unreasonable and unjust for a court of equity to constrain one party to an agreement to specifically perform it when it is without power to compel the other party to do so and he may escape its performance at will, and the general practice as well as the weight of authority sustains the rule.

The amusement company agreed by the fourth, seventh, eighteenth, and nineteenth paragraphs of the contract that it would supervise and control without charge, and that Woodward should manage for $50 per week, the Shubert Theater, subject to the orders and directions of the Shuberts, that Woodward would approve the bookings of the theater, and that its funds should be deposited to the credit of the Shuberts' account by a treasurer appointed by them. Neither the amusement company nor the court, however, has the power to efficiently compel Woodward to do any of the things here required to be done by his personal services, because he is not a party to the contract, he has not agreed to do as the contract recites, and because, if he had signed and agreed, the examination and approval of the bookings and the suitable management of the theater are personal acts whose rightful performance requires special knowledge and experience in the business of operating theaters, and the exercise of skill, discretion, and cultivated judgment, and in the end rests wholly in the will of Woodward. Courts of equity have no efficient means, and therefore will not ordinarily attempt, to constrain an individual to perform personal acts which require special knowledge and experience and the exercise of

skill, discretion, and cultivated judgment. Pomeroy on Contracts, §§ 307, 310; Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955; 26 American & English Encycl. of Law (2d Ed.) p. 95.

It is true that where the performance of negative covenants, express or implied, will tend to constrain the performance of positive covenants for personal services, an injunction may sometimes lawfully issue for that purpose, but neither the amusement company nor Woodward is subject to any negative covenant in this case, whose performance would tend to cause Woodward to approve suitable bookings and to disapprove those which are unsuitable, or to manage the theater wisely and well, and there are no efficient means by which a court of equity could compel him to do so.

Counsel argue that the contract of the amusement company was not that Woodward, the individual, but that Woodward, as its president, should manage the theater and approve the bookings; that these acts were not to be his personal acts, but those of the corporation, and that it may perform them by its agents. But the clear terms of the contract, the provision that the amusement company shall receive no compensation for its supervision, and that the Shuberts shall pay the individual Woodward $50 per week, conclusively negative this contention. There is no logical way of escape from the conclusion that there is a lack of mutuality of remedy upon this contract between the amusement company and the Shuberts, and that there is neither mutuality of obligation nor of remedy between Woodward and the Shuberts; and as it is impossible for a court of equity to so constrain the will of Woodward as to make him rightly exercise his will, his cultivated judgment, his skill, and his discretion in the specific performance of this contract, the court ought not to compel the defendants to perform it.

Again, the enforcement of the specific performance of the contract in hand will necessarily entail upon the courts through many years the supervision and direction of a continuous series of acts, many of which will present the question whether or not they accord with the contract, such as, what bookings should be approved or disapproved, how many and what persons should be employed to operate the theater, how the intricate details of the business of the theater should be conducted, how its operation should be advertised, and many other unforeseen issues which the complicated performance contemplated cannot fail to raise. It is conceded that a court of equity has ample power to determine all these questions and to conduct this business by its receiver, or master, and that it will sometimes enforce the performance of contracts where the performance involves more intricate details, or longer periods of time, where the other equities of the complainant in the case, or the public interest, are controlling. But in the absence of such public interest, or such controlling equities, or of clear evidence that irreparable injury will probably result to the complainant if it withholds the relief sought, a court of equity does not constrain, and it ought not to compel, the enforcement of the specific performance of a contract which cannot be consummated by a speedy, final decree, but which involves the supervision of a continuous series of acts which must extend through a long period of time and which will require the exercise of special knowledge, judgment, and experience. The brevity

of time and the duty of the court to other litigants praying the determination of their suits ordinarily forbid a court to assume unnecessarily so burdensome a task. Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955; Pomeroy on Contracts, § 312; Pullman Palace Car Co. v. Texas & Pacific Ry. Co. (C. C.) 11 Fed. 625; Texas & Pacific Ry. Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385; Port Clinton R. R. Co. v. Cleveland & Toledo R. R. Co., 13 Ohio St. 544.

The issue of an injunction, like the specific performance of a contract, rests in the judicial discretion of a court of equity. It is not a matter of right, and the application for it is addressed to the conscience of the chancellor. It is an indispensable condition of a decree for the specific performance of a contract and of the issue of an injunction against its breach that the moving party has not been guilty of a substantial violation of it himself. He who seeks equity must come into court with clean hands. Marble Company v. Ripley, 10 Wall. 339, 358, 19 L. Ed. 955; Taussig v. Corbin, 142 Fed. 660, 667, 73 C. C. A. 656, 663. Did the record in this case at the time the injunction was issued show that the complainants had complied with their stipulations contained in the contract? The seventh paragraph of the agreement is that the amusement company will take general supervision and control of both theaters and of the business in connection therewith, and that it will make no charges for its services in so doing. The fourth paragraph stipulates that Woodward is designated its representative at a salary of $50 per week, and that he is designated by the Shuberts as their representative at a like salary to be the general manager of the enterprises, "but said representative to be subject to direction and orders from the second party [the Shuberts] hereto." These two paragraphs must be read and construed together, because they are in the same contract and relate to the same subject. All their provisions must be harmonized and given effect if possible, but if there is any conflict between the sentence in quotation, which was written into the contract by the Shuberts after the writing was prepared by the amusement company, and the other provisions of the contract, the former must prevail, as that to which the especial attention of the parties was directed and as the expression of their final intent. Pike's Peak Hydro-Electric Co. v. Power & Mining Machinery Co. (C. C. A.) 165 Fed. 184. Thus read, the legal effect of these paragraphs is that the amusement company will supervise, control, and manage the Shubert Theater by means of the personal services of Woodward, subject to and in accordance with the directions and orders of the Shuberts. And this is the rational interpretation of the entire contract, for it is incredible that the Shuberts intended and agreed to part with all direction and control of their theater and of its business while they bound themselves to pay about $20,000 a year rent for it, guaranteed to book and play 30 weeks in each season therein under a penalty of $1,000 per week, and agreed that the surplus funds derived from its operation should be paid into a general fund with the surplus from the Wood Theater, and that the profits and losses of both should be divided between the parties.

By the second paragraph of the contracts the Shuberts covenanted to cause their theater "to be carried on and conducted as a place of amusement where the highest price of admission should be $1 and the

lowest 25¢, according to the location of the seats," and the necessary legal effect of this provision was that they retained the right to fix the prices of admission within the limits there specified. They specified the prices within the contract limits after the contract had been signed, and notified Woodward that these prices must stand, but the latter disobeyed his direction and prescribed other prices.

Woodward asked permission of the Shuberts to change the midweek matinee at their theater from Wednesday to Thursday. They refused the permission and directed him to hold the matinees on Wednesdays, but he disobeyed their direction and made the matinee days Thursdays. In defiance of the direction of the Shuberts, he discharged the watchman and musical director whom they had employed for their theater, and hired other employés.

The eighth and the eighteenth paragraphs of the contract contain stipulations that the Shuberts should appoint a treasurer of their theater, to be under the supervision of the amusement company, which should not have the power to discharge him, and that all the funds of the theater should be deposited by this treasurer to the credit of the Shuberts' account, and that the surplus should be distributed at the end of the season. The effect of these provisions was that the treasurer appointed by the Shuberts was authorized to receive and to deposit the funds of the Shubert Theater to the credit of the Shuberts' account; that the Shuberts, the owners of this account, should themselves, by their treasurer or otherwise, pay the necessary expenses of the theater out of this fund, and at the end of the year pay the surplus into the general fund that was to be divided. The Shuberts appointed Mr. Miller the treasurer of their theater, and directed that he should receive and deposit all the funds of that theater, and should draw the checks and pay therewith the necessary expenses thereof after the bills therefor were approved by Mr. Woodward. But Mr. Woodward and the amusement company insisted that Woodward alone should determine and pay the expenses of the Shubert Theater, and that they would not permit him to divide this responsibility with Mr. Miller; and Mr. Woodward wrote to the Shuberts that "as long as I am manager of your theater in Kansas City, under the signed contracts, I shall at all times insist upon my right to sign all checks and handle the house along the same lines as I handle every other house with which I am connected." Thus it may be seen that the complainants had violated the contract between the parties before they commenced this suit. They did not come into the court with clean hands. After these violations of the orders of the Shuberts had been committed, they took possession of their theater, discharged some of the employés whom Woodward had hired, and, when Woodward personally appeared and claimed possession of and remained in the theater with the Shuberts, they discharged him as the manager of the theater for disobedience of their orders and insubordination. The complainants then applied to the state court in this suit for an injunction, and that court issued a temporary restraining order whereby the Shuberts were forbidden to interfere with the management, possession, or control of their theater by the complainants, and, under this order and the orders from which this

appeal was taken, the complainants have held the possession of the theater.

One of the principal purposes, and perhaps the main effect, of the orders granting and continuing the injunction, and of the order appointing Woodward manager of the Shubert Theater, is the prevention of the discharge of Woodward by the Shuberts and his maintenance in charge of the defendants' theater as their manager. Before this suit was commenced he had disobeyed the rightful orders of the defendants relative to the scale of prices for admission to the theater, to the hiring of employés, and to the midweek matinees, and relative to the control and disbursement of the fund derived from the theater, and the defendants had good cause to discharge him, and, even if they had no cause, injunction is not the proper remedy for his wrongful discharge. A court of equity is without power to compel Woodward to perform the duties of manager of this theater, because he has never made any agreement to perform them, and because the discharge of those duties requires the rendition of personal services which involve the exercise of cultivated judgment, taste, and experience, and, where a court is without power to compel an employé to serve, the general rule is that it may not enjoin his employers from discharging him. Mair v. Himalaya Tea Co., L. R. 1 Eq. Cas. 410, 415; Bainbridge v. Smith, 41 Chan. Div. 462, 474, 475; Davis v. Foreman, 3 Chancery, L. R. 1894, 654, 656; Pickering v. Bishop of Ely, 2 Younge & Collyer's Chancery, 249, 266; Coburn v. Cedar Valley Land & Cattle Co. (C. C.) 25 Fed. 791, 793.

In Stocker v. Brockelbank, 20 L. J. Eq. (N. S.) Cas. 401, 408, the complainant, a patentee, had granted to Brockelbank & Co. an exclusive license under his patent, and had covenanted to serve them as general manager of their business for 12 years; and they had agreed that he should have the general management of their business during that time, that they would pay him 40 per cent. of the net profits during the time, and a gross sum at its end. They discharged him during the time, and he applied for an injunction. The chancellor denied the application, and said:

"Is there any instance (I am not aware of any—none has been cited; though my attention has been called at other times to questions of this nature, I do not recollect any) where it has been supposed that a contract of hiring and service could be made the subject of an application to this court, if the employer claimed the right to discharge his agent, or to dismiss his servant or his manager, or by whatever name the party to perform the service is to be denominated? I do not recollect any instance of any attempt on the part of a court of equity to compel the employer to retain the servant, agent, or manager, and not to forbear to leave him to his remedy at law for the breach of it. I know of no such case, and I should be surprised if that principle could be recognized by the court; for consider what the effect would be: How is it possible for an employer or an agent to go on in the intimate connection which such a contract is calculated to create? They are to be on the same premises, acting in the management of the same business in this case; and if there is mutual dissatisfaction, well or ill founded, it is perfectly clear that a management, conducted under such circumstances, must tend very much to the prejudice of the concern—in this case, I think, particularly."

Finally, it is a good defense to an application for an injunction that the wrong and injury likely to be inflicted upon the defendants by its issue is greater than that which the complainants are likely to suffer from refusing it. Blount v. Société Anonyme Du Filtre, etc., 53 Fed. 98, 101, 3 C. C. A. 455, 458. The same rule governs the application for specific performance of contracts. Adam's Equity, by Ralston (8th Ed.) 84.

The complainants allege that their damages will be irreparable if an injunction does not issue, but the only damages they plead are those, the amount of which is not stated, resulting from changes in their business, the nature and extent of which they do not set forth, made for the purpose of performing the contract, and the prospective profits from its performance, which they aver "will probably be very large, exceeding perhaps $250,000." But the defendants will lose as much by the loss of profits as will the complainants. The complainants are not the owners of and they have no interest in the Shubert Theater, except their interest in these profits, nor are they primarily liable to pay the rent or the other expenses of its operation. On the other hand, the defendants own the theater; any depreciation of its value, of its reputation, of its income, falls primarily upon them. They are bound to pay $20,000 a year rent for its operation; they have agreed to book and play it 30 weeks in each season, or to pay a penalty of $1,000 for each week less than the 30 which it is booked and played. The change of the midweek matinee, the disobedience of the defendants' orders fixing the scale of prices and directing the employment and discharge of servants, the general insubordination of their manager, and the pregnant fact that the management of the complainants is that of parties with comparatively little interest in the theater, while that of the defendants is the management of the owners of it, of those who have the largest interest in its income and its prosperity and the greatest responsibility for its rent and expenses, have forced the mind to the conclusion that a greater wrong and injury is likely to be inflicted upon the defendants by the issue and maintenance of the injunction and the order appointing Woodward the manager of this theater than is likely to fall upon the complainants by refusing to issue or to maintain the injunction or the order.

Counsel for the complainants invoke the familiar rule that a preliminary injunction maintaining the status quo may properly issue, and that an appellate court will not disturb it, when the questions of law or fact to be ultimately determined in the suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and susceptible to full indemnification by a bond if it is granted. City of Newton v. Levis, 25 C. C. A. 161, 163, 79 Fed. 715, 717; Lehman v. Graham, 135 Fed. 39, 43, 67 C. C. A. 513, 517; Massie v. Buck, 128 Fed. 27, 31, 62 C. C. A. 535, 539. But this rule is not applicable to the case in hand, because the record at the time the injunction issued proved that greater wrong and injury was likely to be inflicted upon the defendants by issuing than the complainants would probably suffer from withholding it. And the

same remark is applicable to the order appointing Woodward manager of this theater, an order which practically gives him the powers and authority of a receiver for the time being. There is another rule of practice more pertinent to the issues involved in this suit. It is that where, on an appeal from an order granting or continuing a temporary injunction, or from an order appointing a receiver, the equity of the bill is challenged and the attack upon it appears to be well founded, the power is conferred and the duty is imposed upon the appellate court to consider it, whether the court below has done so or not, and, if it is of the opinion that the relief sought by the bill cannot be granted, to so decide and thus to save the parties to the suit further expense resulting from the endeavor to secure impossible relief. Smith v. Vulcan Iron Works, 165 U. S. 518, 524, 17 Sup. Ct. 407, 41 L. Ed. 810; Highland Avenue R. R. Co. v. Equipment Co., 168 U. S. 627, 630, 18 Sup. Ct. 240, 42 L. Ed. 605; Cabaniss v. Reco Mining Co., 116 Fed. 318, 320, 54 C. C. A. 190, 192; Chicago Wooden Ware Co. v. Miller Ladder Co., 133 Fed. 541, 545, 66 C. C. A. 517, 521; Arkansas Southeastern R. Co. v. Union Sawmill Co., 154 Fed. 304, 311, 83 C. C. A. 224, 231; Mann v. Gaddie (C. C. A.) 158 Fed. 42, 48.

This bill is for an injunction to prohibit the breach of a contract, and by that means to enforce its specific performance. Its equity is strenuously assailed, and it seems to be wanting. The question thus presented has accordingly been considered with care, and the conclusion is that there is no equity in the bill which entitles the complainants to the injunction for which they pray, because there is no mutuality of obligation between Woodward and the defendants; because there is no mutuality of remedy between the amusement company and the defendants, for the reason that the court is without power to compel the beneficial exercise by Woodward of his trained judgment, taste, and experience in the management of the theater and the approval of its bookings for which these parties contracted; because it would be an unwise and unusual exercise of the authority of the court, if it has such power, to prohibit the defendants from discharging Woodward as manager; and because the relief sought cannot be granted by a speedy final decree, but the attempt to give it must entail upon the courts through many years the supervision and direction of a continuous series of acts involving intricate details which will require the exercise of judgment and special knowledge or experience, and there are no public interests or controlling equities which require the court to assume so burdensome a task.

For the same reasons, and because the complainants first broke the contract, because the issue and maintenance of the injunction and of the order appointing Woodward manager of the theater of the defendants are likely to inflict greater wrong and injury upon the defendants than the complainants would suffer from the withholding of these orders, or their reversal, they may not be sustained.

The court below will not be directed to dismiss the bill, because this suit was not at issue when some of the orders here challenged were made, and the bill may have been amended, or it may be susceptible

of amendment, so that other relief than an injunction may be secured. The question has been discussed by counsel in their briefs whether or not the contract created a partnership between the amusement company and the Shuberts. It has been unnecessary to decide that issue in order to determine the questions now to be decided, and no opinion upon it is intimated. If either party should seek a receiver and dissolution of the partnership, or an accounting upon that ground, and such a partnership should be found to exist, it would seem that both theaters would be equally liable to a receivership and to the orders necessary to wind up such a partnership. The record at the time the order for an injunction was issued shows that when the original restraining order was made Woodward had been discharged as manager by the Shuberts, and they were in practical possession of their theater. They have been deprived of this possession and of the control of their property by the restraining order, the injunction, and the general management orders, and the court below should restore these to them. The orders from which this appeal was taken must be reversed, and the case must be remanded to the court below with directions to cause the complainants to deliver to the defendants the possession, control, and management of the Shubert Theater with all convenient speed, without prejudice to the rights of the complainants to damages for all alleged breaches of the contract by the defendants, to an accounting and to all other remedies except the injunction, the maintenance of Woodward in the management of the Shubert Theater, and the specific performance of the contract, and with instructions to take further proceedings not inconsistent with the views expressed in this opinion.

It is so ordered.

And it is further ordered that the mandate in this case be remitted to the court below ten (10) days after the filing of this opinion.