## MALVERN & F. V. R. CO. v. CHICAGO, R. I. & P. RY. CO.

(Circuit Court, E. D. Arkansas, W. D.   September 1, 1910.)

**1. INJUNCTION (§ 59*)—BREACH OF CONTRACT—IRREPARABLE INJURY.**

The threatened breach by one party of a contract between two connecting railroad companies for a division of rates on through shipments passing from one road to the other for a certain length of time, the validity of which is not denied, affords ground for an injunction; the damages being incapable of approximate estimation by a jury in an action at law.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 114–116, 128; Dec. Dig. § 59.*]

**2. CONTRACTS (§ 303*)—ACTION FOR BREACH—DEFENSES.**

A railroad company is not justified in refusing to observe a contract with another company for a division of rates on through shipments, apparently valid, because of an opinion of the Interstate Commerce Commission delivered in a proceeding to which neither of the companies was a party.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 303.*]

In Equity. Suit by the Malvern & Freeo Valley Railroad Company against the Chicago, Rock Island & Pacific Railway Company. On motion for temporary restraining order. Motion sustained.

Mehaffy, Williams, Cockrill & Armistead, for complainant.

E. B. Pierce and Thos. S. Buzbee, for defendant.

ROGERS, District Judge. The complainant filed its bill in equity, praying for an injunction against the defendant, the Chicago, Rock Island & Pacific Railway Company, based upon the following statement of facts: The complainant and defendant, and two other corporations, to wit, the Rock Island, Arkansas & Louisiana Railroad Company, and the Wisconsin & Arkansas Lumber Company, on the 13th of June, 1907, executed what, for a better name, I denominate a "quadripartite agreement," and on the 4th of January, 1909, executed two other like agreements, which superseded the first. Under these several agreements all of the parties have been conducting

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

their business from the time they were executed up to the present time. However, the Rock Island, Arkansas & Louisiana Railroad and the Wisconsin & Arkansas Lumber Company, parties to those agreements, are not made parties to this suit. The bill seeks to enjoin the Chicago, Rock Island & Pacific Railway Company from breaching the agreements dated January 4, 1909. The bill alleges diverse citizenship and the necessary amount in controversy to give this court jurisdiction. These contracts are voluminous, and they involve moving considerations of great value from each of the contracting parties to each of the others, and likewise contain mutual benefits. Nothing, however, contained in the contract, is essential to an understanding of the question involved in this case, except sections 4 and 10 of the agreement of January 4, 1909. These provisions are as follows:

"(4) The Rock Island Company agrees to establish a train service to handle at least twenty (20) of said cars per day, to be operated from the junction of the Freeo Company with the Railroad Company to the mills of the Lumber Company, and the Freeo Company agrees to deliver at least twenty (20) loaded cars per day to the Rock Island Company for transportation; provided, that upon twenty-four (24) hours' notice the Freeo Company may discontinue said cars from time to time; and provided, further, that if the Freeo Company shall fail to furnish twenty (20) loaded cars per day for transportation, or shall fail to give twenty-four (24) hours' notice as aforesaid, it, the said Freeo Company, shall pay to the Rock Island Company the full amount of all expenses incurred by said Rock Island Company, including wages of train crews, in preparing to move said twenty (20) loaded cars per day."

"(10) The Rock Island Company agrees to publish through interstate rates on yellow pine lumber, in connection with the Freeo Company, covered by the foregoing paragraph, and, on all out-bound shipments delivered to the Rock Island Company under these tariffs, the Rock Island Company agrees to pay the Freeo Company the sum or three (3) cents per one hundred (100) pounds, as a division of the through rates, for its service in transporting the logs from the forest to the mill and delivering the finished product to it at its connection at or near Walco."

The bill seeks to enjoin the defendant from breaching the provisions quoted, by publishing a new tariff of rates canceling the tariffs under which both roads have been operating heretofore and are operating now, in conformity with the provisions of the contracts quoted, and by denying to the complainant road any joint rate with it, and by ceasing all divisions of rates, earnings, and profits on freight transferred to it from the lines of the complainant road. The bill alleges that the complainant is a corporation organized under the laws of the state of Arkansas for the organization and incorporation of railroad companies, and is chartered by said state to operate a railroad company, and is engaged in the business of carrying freight and passengers for hire as a common carrier, and is operating a railroad, and is engaged in the business of carrying freight and passengers for hire; that it uses in the transaction of its business the distance tariff prescribed and published by the Arkansas State Railroad Commission, and the joint through tariff prescribed and published by the traffic association known as the Southwestern Lines Tariff Committee, which said tariff is published by the Chicago, Rock Island & Pacific Railway Company and other carriers, and is

filed with the Interstate Commerce Commission of the United States for use in interstate traffic; that the defendant is a railroad corporation chartered under the laws of Illinois, authorized to operate a railroad or railroads as a common carrier; that complainant's road connects with the road of defendant in Arkansas, and that the defendant's road is authorized under the laws of the state of Arkansas, and is engaged in the common carriage of freight and passengers for hire, and is a citizen of the state of Illinois. The bill is full and specific, but enough has been said to present the question involved.

The defendant company admits all the allegations of the bill, including the execution of the contract and the operation of its road in pursuance thereof since its execution, and asserts its willingness to abide by the contract, if valid. In substance it asserts that from the execution of the contract to December 7, 1909, when the case of Star Grain & Lumber Company et al. v. Atchison, Topeka & Santa Fé Railroad Company et al. (opinion No. 1910) was decided by the Interstate Commerce Commission (17 Interst. Com. Com'n R. 338), it had supposed the contract was legal and had accordingly observed it, and that it was entered into in good faith after the opinion in the case of Central Yellow Pine Association v. Vicksburg, Shreveport & Pacific Railway Company et al., 10 Interst. Com. R. 193, was handed down, and that said contract was executed upon the strength of that decision; but it says that under the Star Grain Case, supra, as it construes it, it is threatened with the heavy penalties of the interstate commerce law if it shall continue to observe the contracts, and hence it has determined to breach all its contracts, 12 or 15 in number, the complainant included, with what is known as "tap lines," and admits it is about to put into use a new set of interstate tariff rates, excluding all tap lines from any share in their interstate business.

The answer to all this matter of defense, including the answer to the Star Grain Case, is that the rights of litigants in the court are not to be determined by the swing of the "Big Stick," but rather each case must be determined on the facts of that particular case, and through the means of the orderly procedure of the courts providing for the protection of the rights of all the people alike. Whether the complainant's company on a full hearing will be able to establish any case must depend on the true facts of the case when developed by the evidence. It may not be a common carrier at all. It may be a mere device, and its organization effected for no other purpose than as a mere incident to promoting the lumber interests of the Wisconsin & Arkansas Lumber Company. It may not be entitled to any share in the interstate rates of the defendant company under the contracts above referred to. The contract itself may be invalid, because inconsistent with the interstate commerce law, or as against public policy. The division of rates provided for in the contract between complainant and defendant may be unreasonable, and operate to discriminate against or give preference to shippers, and it may invite the careful consideration of the Interstate Commerce Commission and the courts having supervisory control

over the action of that commission. None of these things are decided now.

The action of the court must be based upon the admitted facts set forth in the bill. It is readily anticipated that many perplexing and troublesome questions, far-reaching and of vast importance to the trunk and tap lines, and to the public as well, may grow out of the subsisting conditions between those lines; but it is the part of conservative and wise action to let these questions be determined as they arise and by tribunals having jurisdiction thereof under the laws of the land. All parties are entitled to a day in court, and to due process of law, before being deprived of their property or property rights. On the face of this bill it does not appear that there is anything illegal in the contract about to be breached by the defendant company. If complainant is a common carrier, it must be entitled to its share of interstate rates. The law enjoins that very thing upon the litigating parties, and it enjoins upon the Interstate Commerce Commission, upon proper showing and conditions, to enforce that law. Sections 7 and 12 of the act of June 18, 1910 (36 Stat. 544, 551, c. 309) known as the "Mann-Elkins Act."

In this case the fairness of the division of the rate is conceded; the validity of the contract is not assailed; the public is not shown to be concerned in its observance or nonobservance; the fact that complainant is a common carrier is not assailed; defendant's breach of this contract is distinctly based by the defendant upon the Star Grain Case, to which case the complainant was not a party, and was not in any sense represented. Its rights, therefore, could not be foreclosed by that case, even if the majority opinion in that case is sound law; and this, for the reason that the commission had no jurisdiction over the person of the complainant or the subject-matter now involved. Nor does the bill assail or seek to review any order of the Interstate Commerce Commission in the Star Grain Case; for, indeed, no order was made in that case by the commission. The commission simply indicated its views on the subject of the subsisting relations between the trunk and tap lines, and expressed the expectation of the commission that the trunk lines would conform their practices to them. That action of the commission could not be reviewed by any court, and therefore was not binding upon any one, even the parties to that proceeding. It was admonitory simply, and decided nothing which was subject to review.

It is stated in the statement of Mr. E. B. Pierce, attorney for the defendant company, which is by consent made a part of the record in this case for the purpose of this hearing, that the bill states a case of equity cognizance for the reasons contained in his statement, to which others may be added. I give my full assent to the conclusion that the remedy at law in a case like this is wholly inadequate. The measure of damages for a breach of this contract, under the conditions presented, could never be approximately reached through the instrumentality of a jury trial. Assuming the bill to be true, the breach of the contract clearly threatens visiting irreparable damage to the complainant road. That the court in such case has the power, and that it is its duty generally, to restrain such a breach of contract,

I think may be considered as settled law. Chicago & A. Ry. Co. v. N. Y., L. E. & W. R. Co., 24 Fed. 516; Shubert et al. v. Woodward et al., 167 Fed. 53, 92 C. C. A. 509; Donovan v. Pennsylvania Railroad, 199 U. S. 279, 26 Sup. Ct. 91, 50 L. Ed. 192; Union Pac. Ry. Co. v. C., R. I. & P. Ry. Co., 163 U. S. 568, 16 Sup. Ct. 1173, 41 L. Ed. 265; 22 Cyc. 768, 848. And cases might be multiplied.

A careful examination of the interstate commerce law as it now stands has not led me to the conclusion that in the present condition of this case the Interstate Commerce Commission has jurisdiction, to the exclusion of this court, of the questions presented by this bill. If conditions shall arise upon the development of the facts in this case which make it necessary to remit the parties and the subject-matter of this bill to the Interstate Commerce Commission, the court will be able to contrive such a decree as will protect the rights of all the parties, and that must be left for future consideration.

Meantime the temporary restraining order in this case will be granted.